DIANE M. GIGLIO *v.* AMERICAN ECONOMY
INSURANCE COMPANY
(SC 17480)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

---

Argued April 17—officially released July 4, 2006

*Gregg A. Rubenstein*, pro hac vice, with whom were *Michael F. Cavolo* and, on the brief, *Joseph C. Tanski*, pro hac vice, and *Charles W. Pieterse*, for the appellant (substitute plaintiff).

*Christopher P. Kriesen*, with whom were *Jamie Fine*, certified legal intern, and, on the brief, *Rodd J. Mantell*, for the appellee (defendant).

*Opinion*

KATZ, J. The issue in this appeal is the validity of an automobile insurance policy's exclusion from uninsured motorist coverage for government owned vehicles when the insurance carrier that issued the government's policy is insolvent. The substitute plaintiff, the Connecticut Insurance Guaranty Association

(association),[1] appeals from the trial court's judgment rendered in favor of the defendant, American Economy Insurance Company (American Economy), on cross motions for summary judgment. The association contends that the trial court improperly concluded that § 38a-334-6 (c) (2) (C) of the Regulations of Connecticut State Agencies,[2] under which the exclusion from uninsured motorist coverage is authorized, is valid and does

[1] The present action seeking uninsured motorist benefits originally was brought by the plaintiff, Diane M. Giglio, against the defendant, American Economy Insurance Company, her automobile insurer. As a result of a settlement agreement, Giglio assigned her rights under her insurance policy to the association, and the association then was substituted for Giglio as the plaintiff in the present action.

The association is a " 'nonprofit unincorporated legal entity' created by General Statutes § 38-276 [now General Statutes § 38a-839] and composed of all insurers licensed to transact business in this state that write any kind of direct insurance, except for those specifically excluded from the application of the Connecticut Insurance Guaranty Association Act by General Statutes § 38-274 [now General Statutes § 38a-837]." *Connecticut Ins. Guaranty Assn.* v. *Union Carbide Corp.*, 217 Conn. 371, 375–76, 585 A.2d 1216 (1991).

[2] Section 38a-334-6 of the Regulations of Connecticut State Agencies, entitled "Minimum provisions for protection against uninsured or underinsured motorists," provides in relevant part: "(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured or underinsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent. . . .

"(c) Exclusions. The insurer's obligations to pay may be made inapplicable:

"(1) To any claim which has been settled with the uninsured motorist without the consent of the insurer;

"(2) if the uninsured or underinsured motor vehicle is owned by

"(A) the named insured or any relative who is a resident of the same household or is furnished for the regular use of any of the foregoing,

"(B) a self insurer under any motor vehicle law, or

"(C) any government or agency thereof;

"(3) to pay or reimburse for workers' compensation or disability benefits. . . ."

not conflict with the uninsured motorist statute, General Statutes § 38a-336,[3] or the public policy embodied in the Connecticut Insurance Guaranty Association Act, General Statutes §§ 38a-836 through 38a-853 (guaranty act).[4] We conclude that the regulation authorizing the exclusion is valid and, therefore, we affirm the judgment of the trial court.

The following facts and procedural history are undisputed. On December 16, 1996, Diane M. Giglio was operating her vehicle on a public highway in Wallingford, when her vehicle was struck by a police cruiser owned by the town of Wallingford (town) and operated by a Wallingford police officer, Anthony DeMaio. At the time of the collision, the town was insured for liability by Reliance Insurance Company (Reliance) and Giglio was insured by the defendant, American Economy. Giglio's policy covered bodily injury for which she is legally entitled to recover from the owner or operator of an uninsured motor vehicle.[5] The policy, however, specifi-

[3] General Statutes § 38a-336 (a) (1) provides in relevant part: "Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334 . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. . . ."

[4] The guaranty act establishes the association "for the purpose of providing a limited form of protection for policyholders and claimants in the event of insurer insolvency. The protection it provides is limited based upon its status as a nonprofit entity and the method by which it is funded. . . . When an insurer is determined to be insolvent under [General Statutes] § 38a-838 (7), the association becomes obligated pursuant to [General Statutes] § 38a-841, to the extent of covered claims within certain limits. The rates and premiums charged by member insurers are authorized by General Statutes § 38a-849 to include amounts sufficient to recoup the assessments levied upon insurers by the association." *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 451, 705 A.2d 1012 (1997).

[5] The policy issued by American Economy also provided underinsured motorist coverage. "Under our law the statutes and regulations applicable to uninsured motorist coverage also apply to underinsured motorist coverage."

cally excluded from the definition of "uninsured motor vehicle" any vehicle or equipment "owned by any governmental unit or agency."[6]

Following the collision, Giglio brought an action against the town and DeMaio, alleging that the accident had caused her serious personal injury and damages for which they legally were liable. Following the commencement of that action, however, the town's insurance carrier, Reliance, was declared insolvent by a Pennsylvania court. Giglio subsequently brought an action against American Economy, seeking recovery under her policy's uninsured motorist coverage. She alleged that, because of the insolvency of Reliance, the town's insurance policy no longer was available to compensate her for her losses. Thereafter, the trial court, *Wiese, J.*, granted Giglio's motion to consolidate

---

*Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 153 n.1, 617 A.2d 454 (1992). Because this case involves a claim for uninsured coverage, we refer herein only to that coverage.

[6] Specifically, subsection A of part C of the policy, pertaining to uninsured and underinsured motorists coverage, provides in relevant part: "If a limit for this coverage is displayed on the declarations, we will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' or 'underinsured motor vehicle' because of 'bodily injury:'

"1. Sustained by an 'insured;' and

"2. Caused by an accident."

Subsection C of part C sets forth the following exclusions to the terms "[u]ninsured motor vehicle" and "[u]nderinsured motor vehicle" providing in relevant part: "However 'underinsured motor vehicle' does not include any vehicle or equipment . . .

"1. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

"a. Denies coverage; or

"b. Is or becomes insolvent.

"2. Owned or operated by a self-insurer under any applicable motor vehicle law.

"In addition, neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes any vehicle or equipment:

"1. Owned by or furnished or available for your regular use.

"2. Owned by any governmental unit or agency. . . ."

her action against the town and DeMaio with her action against American Economy. American Economy moved for summary judgment, claiming that Giglio's uninsured motorist coverage did not extend to claims involving a government owned vehicle.

When Reliance was declared insolvent, the association determined that it had become obligated under the guaranty act to pay certain covered claims arising out of and within the coverage of Reliance policies. Accordingly, the association moved to intervene in Giglio's action against American Economy, anticipating that, if American Economy prevailed on its summary judgment motion, Giglio would look to the association to compensate her for her losses. After the trial court, *Graham*, *J.*, denied the association's motion to intervene, the association reached a settlement with Giglio under which it agreed to pay Giglio's claim for damages in exchange for her withdrawal of the action against the town and DeMaio. Pursuant to the settlement, Giglio also assigned to the association her rights under her uninsured motorist coverage against American Economy. Following its substitution for Giglio as the plaintiff in this action, the association filed an amended complaint seeking recovery of the damages it had paid to Giglio and a declaratory judgment holding American Economy obligated as a solvent insurer to provide uninsured motorist coverage for a claim of bodily injury caused by a municipality whose insurer became insolvent.

In response, American Economy filed two special defenses, claiming that: (1) the association's action is barred because Giglio's policy prohibited the transfer of her rights and duties under the policy without American Economy's written consent, which had been neither sought nor secured; and (2) the tortfeasor who had caused the accident was operating a government owned vehicle, which is excluded from coverage under the

policy. The association moved for summary judgment, claiming that the exclusion from coverage in American Economy's policy was not valid.

The trial court, *Arnold, J.*, then considered the cross motions for summary judgment and rendered judgment in favor of American Economy. In so doing, the court concluded that, although Giglio could assign to the association the right she might have to recovery under the uninsured motorist provision of her policy,[7] that policy did not provide any coverage for Giglio's assigned claim because of its explicit exclusion from the definition of uninsured motorist vehicles any vehicle owned by a governmental unit or agency. As part of its determination, the court concluded that American Economy's exclusion of government owned vehicles was authorized pursuant to § 38a-334-6 (c) (2) (C), and that the regulation itself was valid because it does not conflict with the public policy embodied in the uninsured motorist statute, § 38a-336, or the public policy underlying the guaranty act. The association then appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the association essentially contends that the trial court improperly concluded that claims related to government owned vehicles that were insured under a policy issued by a now insolvent insurer may be excluded from uninsured motorist coverage. Specifically, the association's contentions distill to two claims: (1) the regulation, § 38a-334-6 (c) (2) (C), is not valid because it conflicts with § 38a-336, the uninsured motorist statute, which does not provide an exemption from mandatory uninsured motorist coverage for government owned vehicles; and (2) the regulation is not

---

[7] The trial court's ruling regarding the assignment of the policy by Giglio to the association is not a subject of this appeal.

valid because it conflicts with the guaranty act.[8] According to the association, in order to avoid such conflict, the regulation must be interpreted not to apply to government owned vehicles insured by an insurer determined thereafter to be insolvent. We disagree and, accordingly, we affirm the summary judgment rendered by the trial court.

As an initial matter, we set forth the well established standard of review for summary judgment. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Orkney* v. *Hanover Ins. Co.*, 248 Conn. 195, 201, 727 A.2d 700 (1999). Moreover, "[c]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 40, 801 A.2d 752 (2002). The association's claims also raise issues of statutory construction. Although our legislature recently has enacted General Statutes § 1-2z, in the pres-

---

[8] We recognize that the association has characterized its appeal as involving the following five issues: "(1) [w]hether the trial court erred . . . when it ruled that uninsured motorist benefits are not available to [Giglio] under the insurance policy issued to [her] by [American Economy] . . . (2) [w]hether the trial court erred . . . when it ruled that . . . § 38a-334-6 (c) (2) (C) [of the regulations] is valid . . . (3) [w]hether the trial court erred . . . when it ruled that . . . § 38a-334-6 (c) (2) (C) does not conflict with . . . § 38a-336 [the uninsured motorist statute] . . . (4) [w]hether the trial court erred . . . when it ruled that . . . § 38a-334-6 (c) (2) (C) does not conflict with . . . § 38a-836 et seq. [the guaranty act] [and] (5) [w]hether the trial court erred . . . when it ruled that uninsured motorist benefits are not available in situations where a government-owned vehicle is insured but the insurer is subsequently declared insolvent." These issues are subsumed, however, in our two part analysis.

ent case, neither of the parties claim that the guaranty act in conjunction with the uninsured motorist statute yields a plain and unambiguous answer to the question of whether the regulation authorizing the exclusion from uninsured motorist coverage is valid. Accordingly, our analysis is not limited, and we, therefore, apply "our well established process of statutory interpretation, under which we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *DeOliveira* v. *Liberty Mutual Ins. Co.*, 273 Conn. 487, 498 n.7, 870 A.2d 1066 (2005).

We begin our analysis with a review of the applicable statutory and regulatory scheme. Pursuant to General Statutes §§ 38a-336 (a) and 38a-334, all automobile liability policies must provide a minimum level of uninsured motorist coverage for the protection of persons insured thereunder. See footnote 3 of this opinion. Specifically, § 38a-336 (a) (1) provides in relevant part that, "[e]ach automobile liability insurance policy *shall provide* insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334 . . . ." (Emphasis added.) Section 38a-334 (a), in turn, directs the insurance commissioner to "adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies," and provides that, "[s]uch regulations shall relate to the insuring agreements, exclusions, conditions and other terms

applicable to the bodily injury liability, property damage liability, medical payments and uninsured motorists coverages . . . ."

Section 38a-334-6, the regulation promulgated by the insurance commissioner pursuant to § 38a-334, sets forth those mandated minimum requirements for the provision of protection against uninsured motorists. The regulation requires the insurer to pay all sums that the insured legally is entitled to recover as damages from the owner or operator of an uninsured motor vehicle. The regulation specifies that the term "uninsured motor vehicle" includes a motor vehicle insured against liability by an insurer that is or becomes insolvent, but it also provides that the "insurer's obligations to pay may be made inapplicable . . . if the uninsured or underinsured motor vehicle is owned by . . . any government or agency thereof . . . ." Regs., Conn. State Agencies § 38a-334-6 (c) (2) (C); see footnote 2 of this opinion.

The parties do not dispute that a comparison of the language in the exclusion for government owned vehicles in American Economy's insurance policy to the language in § 38a-334-6 makes it clear that the exclusion is authorized by the regulation. Thus, if the regulation is valid, then the policy's exclusion is valid.[9] The association claims that the regulation is not valid, however,

[9] We note that, "[w]hen an insurer seeks to limit its liability for uninsured or underinsured motorist coverage based on [a] regulation issued pursuant to [General Statutes (Rev. to 1989)] § 38-175c [now § 38a-336], it may do so only to the extent that the regulation expressly authorizes. . . . Similarly, where an insurer seeks to limit its liability based on the statute itself, rather than on the regulation, it should only be permitted to do so to the extent that the statute expressly authorizes. In order for a policy exclusion to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision." (Citations omitted; internal quotation marks omitted.) *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 156, 617 A.2d 454 (1992). The necessary congruence exists in the present case.

because it is inconsistent both with the uninsured motorist statute and with the guaranty act.

## I

We turn first to the uninsured motorist statute and the association's contention that the regulation, § 38a-334-6 (c) (2) (C), is not valid because it conflicts with the uninsured motorist statute, which does not provide an exemption from mandatory uninsured motorist coverage for government owned vehicles. American Economy responds to this contention by noting that its exclusion of government owned vehicles from uninsured motorist coverage expressly is authorized by the regulation. It contends that the insurance commissioner acted within the authority conferred by the legislature when promulgating the regulation, and that the regulation is consistent both with the public policy and legislative intent of the uninsured motorist statute. We agree.

In determining whether the government owned vehicle exclusion of the regulation is inconsistent with the uninsured motorist statute requiring that each automobile policy "shall provide" uninsured motorist coverage; General Statutes § 38a-336 (a) (1); see footnote 3 of this opinion; we first look to the text of the uninsured motorist statute itself and its relationship to other statutes. It is well established that "[a] statute is enacted as a whole and must be read as a whole rather than as separate parts or sections. . . . Further, [w]ords in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended." (Citation omitted; internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 269 Conn. 802, 810, 850 A.2d 114 (2004).

Although the phrase "shall provide insurance" contained in § 38a-336 (a) (1) might be very broad in the abstract, within the context of the uninsured motorist statute, the legislature narrowed its meaning by modi-

fying it with the qualifying phrase, "in accordance with the regulations adopted pursuant to section 38a-334 . . . ." As we have noted previously, § 38a-334 (a), in turn, authorizes the insurance commissioner to adopt regulations establishing "minimum provisions," and provides that "[s]uch regulations shall relate to insuring agreements, *exclusions*, conditions and other terms applicable to . . . uninsured motorists coverages under such policies. . . ." (Emphasis added.)

Mindful of the relationship between these two statutes, we have explained more than once that the uninsured motorist statute "does not require that [uninsured] motorist coverage be made available when the insured has been otherwise protected . . . . Nor does the statute provide that the [uninsured] motorist coverage shall stand as an independent source of recovery for the insured, or that the coverage limits shall not be reduced under appropriate circumstances. [Rather] [t]he statute merely requires that a certain minimum level of protection be provided for those insured under automobile liability insurance policies; *the insurance commissioner . . . has been left with the task of defining those terms and conditions which will suffice to satisfy the requirement of protection.*" (Emphasis added; internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Farrish-LeDuc*, 275 Conn. 748, 757, 882 A.2d 44 (2005), quoting *Orkney* v. *Hanover Ins. Co.*, 248 Conn. 195, 205, 727 A.2d 700 (1999). "[T]he insurance commissioner has a very broad grant of regulatory authority in filling in the interstices of the uninsured and underinsured motorist coverage legislation, and in doing so his regulation is entitled to great deference." (Internal quotation marks omitted.) *Mass* v. *United States Fidelity & Guaranty Co.*, 222 Conn. 631, 649, 610 A.2d 1185 (1992).

Indeed, "[i]t is well established that an administrative agency's regulations are presumed valid and, unless

they are shown to be inconsistent with the authorizing statute, they have the force and effect of a statute. . . . This presumption is further underscored by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., which provides for legislative oversight through the legislative regulation review committee prior to approval of the regulations. General Statutes § 4-170." (Citations omitted; internal quotation marks omitted.) *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 520 n.15, 767 A.2d 692 (2001). "Moreover, [a] person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant." (Internal quotation marks omitted.) *Mass* v. *United States Fidelity & Guaranty Co.*, supra, 222 Conn. 649. The association simply has not met this burden.

In addition to the presumption of validity and deference to the broad grant of regulatory authority given to the insurance commissioner, we also consider that the government owned vehicle exclusion at issue was part of the original regulation, formerly § 38-175a-6 (c) (2) of the Regulations of Connecticut State Agencies, that was promulgated by the commissioner shortly after the enactment of the uninsured motorist statute and that took effect on January 1, 1968.[10] If "a regulation has been in existence for a substantial period of time and the legislature has not sought to override the regulation, this fact, although not determinative, provides persuasive evidence of the continued validity of the regulation." (Internal quotation marks omitted.) *Orkney* v. *Hanover Ins. Co.*, supra, 248 Conn. 204. Indeed, since 1967, when uninsured motorist coverage was first mandated; Public Acts 1967, No. 510; the legislature has

---

[10] In 1968, § 38-175a-6 (c) of the Regulations of Connecticut State Agencies, now § 38a-334-6 (c), provided in relevant part: "The insurer's obligations to pay may be made inapplicable . . . (2) if the uninsured automobile is owned by . . . (C) any government or agency thereof . . . ."

amended §§ 38a-334 and 38a-336 numerous times, but it never has taken any action to prohibit an automobile liability insurer from excluding government owned vehicles from uninsured motorist coverage as authorized by the regulation, § 38a-334-6 (c) (2) (C). We consider this "strong evidence that the commissioner's authorization of the exclusion is valid." *Orkney* v. *Hanover Ins. Co.*, supra, 204.[11]

Our conclusion is further buttressed by our previous similar treatment of two other exclusions created by subsection (c) (2) of the regulation. See footnote 2 of this opinion. In *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 157, 617 A.2d 454 (1992), this court concluded that § 38a-334-6 (c) (2) (A), authorizing an exclusion from coverage requirements for vehicles that are owned or regularly used by the named insured or a relative in the same household, is "fully consistent with the underlying rationale of underinsured motorist coverage . . . ." This court relied in part on the fact that the regulation "was repromulgated after legislative review in 1986."[12] Id., 162. In *Orkney* v. *Hanover Ins. Co.*, supra, 248 Conn. 203, this court similarly concluded that § 38a-334-6 (c) (2) (B), authorizing an exclusion for vehicles owned by a self-insurer, did not contravene the purpose of the uninsured motorist statute. We found "nothing inconsistent between the public policy under-

---

[11] Moreover, we note that the legislative history of the uninsured motorist statute does not illuminate the intention of the legislature with respect to the exclusions authorized by § 38a-334-6 of the regulations.

[12] General Statutes § 4-170 (a), requiring approval of state agency regulations by the legislative review committee, provides in relevant part: "There shall be a standing legislative committee to review all regulations of the several state departments and agencies following the proposal thereof . . . ." "The fact that the [insurance] commissioner's regulation has been approved by the standing legislative regulation review committee, although not dispositive of the issue before us, is an *important consideration* in our determination of whether the commissioner's regulation comports with the legislative intent . . . ." (Emphasis in original; internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 183, 713 A.2d 1269 (1998).

lying underinsured motorist coverage and a regulation that permits a coverage exclusion that is based upon a demonstrated ability to pay judgments rendered." Id., 206.

Finally, in recognizing that "[t]he automobile liability insurance business is one which is extensively regulated"; *Wilson* v. *Security Ins. Co.*, 213 Conn. 532, 539, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990), cert. denied, 502 U.S. 1005, 112 S. Ct. 640, 116 L. Ed. 2d 658 (1991); we also have noted that, in regulating the industry, the legislature and the insurance commissioner have determined that some parties may self-insure, and they have determined the degree of proof of solvency required by such parties. See, e.g., General Statutes §§ 14-129[13] and 38a-371 (c);[14]

---

[13] General Statutes § 14-129 provides: "(a) Any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the [insurance] commissioner as provided in subsection (b) of this section.

"(b) The commissioner may, in his discretion, upon the application of such person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.

"(c) Upon not less than five days' notice and a hearing pursuant to such notice, the commissioner may, upon reasonable grounds, cancel a certificate of self-insurance. Failure to pay any judgment within thirty days after such judgment has become final shall constitute a reasonable ground for the cancellation of a certificate of self-insurance."

[14] General Statutes § 38a-371 (c) provides: "Subject to approval of the Insurance Commissioner the security required by this section, may be provided by self-insurance by filing with the commissioner in satisfactory form: (1) A continuing undertaking by the owner or other appropriate person to perform all obligations imposed by this section; (2) evidence that appropriate provision exists for the prompt and efficient administration of all claims, benefits, and obligations provided by this section; and (3) evidence that reliable financial arrangements, deposits or commitments exist providing assurance for payment of all obligations imposed by this section substantially equivalent to those afforded by a policy of insurance that would comply with this section. A person who provides security under this subsection is a self-insurer. *A municipality may provide the security required under this section by filing with the commissioner a notice that it is a self-insurer.*" (Emphasis added.)

see also *Boynton* v. *New Haven*, 63 Conn. App. 815, 819–20, 779 A.2d 186 ("[u]nlike private owners of a fleet of motor vehicles, the city was not required to provide evidence of financial responsibility"), cert. denied, 258 Conn. 905, 782 A.2d 136 (2001); *Willoughby* v. *New Haven*, 254 Conn. 404, 435–36, 757 A.2d 1083 (2000) (setting forth legislative history relevant to municipal exemption from self-insurance requirements). The legislature thus allows a governmental entity to obtain the status of a self-insurer merely by filing a notice that it is self-insured, presumably, because of its ability to pay claims for which it chooses not to seek commercial insurance. J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (3d Ed. 2004) § 3.14, p. 299. As in *Orkney* v. *Hanover Ins. Co.*, supra, 248 Conn. 206, we find "nothing inconsistent between the public policy underlying [uninsured] motorist coverage and a regulation that permits a coverage exclusion that is based upon [a legislatively determined] . . . ability to pay judgments rendered." The fact that the governmental entity presently before us chose not to self-insure, but, rather, to seek commercial insurance coverage from the now insolvent Reliance, does not render the otherwise proper regulation providing an exclusion for government owned vehicles improper. Thus, we conclude that the association has failed to meet its burden to establish that the regulation, adopted by the insurance commissioner to permit the exclusion of government owned vehicles, is inconsistent with the uninsured motorist statute.[15]

---

[15] In reaching this conclusion, we reject the association's contention that this court should follow the holding of a Massachusetts trial court, which addressed facts similar to those presently before us and granted summary judgment in favor of the Massachusetts Insurers Insolvency Fund. See *Massachusetts Insurers Insolvency Fund* v. *Premier Ins. Co.*, Superior Court of Massachusetts, Suffolk County, Docket Nos. 044581BLS, 045250BLS, 045251BLS (September 15, 2005). That trial court relied upon a decision of the Massachusetts Supreme Judicial Court, *Massachusetts Insurers Insolvency Fund* v. *Safety Ins. Co.*, 439 Mass. 309, 312, 787 N.E.2d 555 (2003), which it interpreted as holding that a court could not consider the condition

## II

We next turn to the association's alternative contention that, even if the regulation does not conflict with the uninsured motorist statute, in order to be consistent with the guaranty act, it must be interpreted not to apply to government owned vehicles insured by a now insolvent insurer. The association's argument distills to a claim that the legislative intent behind the guaranty act, as evidenced by its definition of a covered claim and its exhaustion provision, is to preserve the association's limited resources by shifting loss from the association to a solvent insurer. Therefore, the association contends, the government owned vehicle exclusion in the regulation is inconsistent with the guaranty act because it relieves a solvent insurer of an obligation to pay uninsured motorist coverage. In other words, the association seeks to shift the cost of Giglio's claims against the town, and therefore against the association through the town's insolvent insurer, Reliance, to Giglio's own insurer, American Economy, by asking this court to rewrite the policy issued to Giglio by her insurance

---

or status of the owners of motor vehicles, but must consider only the motor vehicles themselves when interpreting Massachusetts General Laws c. 175, § 113L (1), the Massachusetts uninsured motorist statute. The court then concluded that the "policy language stating that [government owned] vehicles, purely because they are 'owned by a governmental unit,' are not uninsured when, in fact, they were insured by a company that became insolvent, cannot be read in a manner consistent with the holding in [*Safety Ins. Co.*]." *Massachusetts Insurers Insolvency Fund* v. *Premier Ins. Co.*, supra, 7.

We decline to adopt the trial court's holding for two reasons. First, we are not persuaded by the trial court's interpretation of the Massachusetts Supreme Judicial Court decision. Second, even if we were to assume that the meaning attributed to the *Safety Ins. Co.* decision by the trial court is accurate, Connecticut law and precedent do not similarly limit the insurance commissioner's power to promulgate regulations with respect to minimum provisions to be included in automobile liability insurance policies relating to the insuring agreements, exclusions, conditions and other terms applicable to uninsured motorists coverages. There is nothing in § 38a-334 that prevents the Connecticut insurance commissioner from expressing an exclusion that he or she is authorized to promulgate in terms of ownership.

company. We decline to create coverage where none exists.

It is well recognized that the "association was established for the purpose of providing a limited form of protection for policyholders and claimants in the event of insurer insolvency. . . . When an insurer is determined to be insolvent under [General Statutes] § 38a-838 (7), the association becomes obligated pursuant to [General Statutes] § 38a-841, to the extent of covered claims within certain limits. . . . Limitations on the association's obligations . . . provide another form of protection against increased premiums for policyholders in addition to the primary protection afforded all claimants against losses resulting from insurer insolvency." *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 451, 705 A.2d 1012 (1997).

The association's contention focuses on two limitations on its obligations under the guaranty act, as well as the public policy that it claims these limitations are intended to effectuate. Specifically, the association's obligation is limited by the statutory definition of the term "covered claims" that explicitly excludes several types of claims, including "any claim by or for the benefit of any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise . . . ." General Statutes (Sup. 2006) § 38a-838 (5) (B) (i).[16] The association's obligation also is

[16] General Statutes (Sup. 2006) § 38a-838 (5) provides: " 'Covered claim' means an unpaid claim, including, but not limited to, one for unearned premiums, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which sections 38a-836 to 38a-853, inclusive, apply issued by an insurer, if such insurer becomes an insolvent insurer after October 1, 1971, and (A) the claimant or insured is a resident of this state at the time of the insured event; or (B) the claim is a first party claim for damage to property with a permanent location in this state, provided the term 'covered claim' shall not include (i) any claim by or for the benefit of any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not

limited by an exhaustion requirement under General Statutes § 38a-845 (1), which provides in relevant part that "[a]ny person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, which is also a covered claim under [the guaranty act] shall exhaust first his rights under such policy. . . ."

The guaranty act does not address the validity of exclusions from uninsured motorist coverage. Cf. *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 451 (involving statutory interpretation of specific language in guaranty act, court determined phrase "as subrogation recoveries or otherwise" in definition of "covered claim"). Indeed, the guaranty act does not provide any specific direction as to how to interpret the scope of coverage under an insurance policy. See *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 791–92,

a claim by or for the benefit of a reinsurer, insurer, insurance pool or underwriting association, would be a 'covered claim' may be filed directly with the receiver of the insolvent insurer but in no event shall any such claim be asserted against the insured of such insolvent insurer, (ii) any claim by or on behalf of an individual who is neither a citizen of the United States nor an alien legally resident in the United States at the time of the insured event, or an entity other than an individual whose principal place of business is not in the United States at the time of the insured event, and it arises out of an accident, occurrence, offense, act, error or omission that takes place outside of the United States, or a loss to property normally located outside of the United States or, if a workers' compensation claim, it arises out of employment outside of the United States, (iii) any claim by or on behalf of a person who is not a resident of this state, other than a claim for compensation or any other benefit which arises out of and is within the coverage of a workers' compensation policy, against an insured whose net worth at the time the policy was issued or at any time thereafter exceeded twenty-five million dollars, provided that an insured's net worth for purposes of this section and section 38a-844 shall be deemed to include the aggregate net worth of the insured and all of its subsidiaries as calculated on a consolidated basis, (iv) any claim by or on behalf of an affiliate of the insolvent insurer at the time the policy was issued or at the time of the insured event, or (v) any claim arising out of a policy issued by an insurer which was not licensed to transact insurance in this state either at the time the policy was issued or when the insured event occurred . . . ."

900 A.2d 18 (2006) (contra proferentem rule of statutory interpretation applies to association to same extent it applies to insolvent insurer).

It is true that the guaranty act does not require the association to pay claims "by or for the benefit of any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise . . . ." General Statutes § 38a-838 (5) (B) (i). Giglio's claim, however, does not fall within the scope of that provision. As we previously have explained, the regulation, and therefore American Economy's policy that is congruent with that regulation, is consistent with the uninsured motorist statute. Thus, the payments made to Giglio by the association did not benefit American Economy by relieving it of an obligation it otherwise would have had, because, in fact, it had no such obligation.

The exhaustion provision of the guaranty act requiring that a claimant exhaust other available policies before recovery is permitted from the association is similarly inapplicable. See General Statutes § 38a-845. The exhaustion requirement applies only when there is a valid claim against another insurance company. In the present matter, Giglio did not have a valid claim against her insurance company because the policy explicitly excluded government owned vehicles from uninsured motorist coverage.

Neither the limitations of the definition of covered claims, the exhaustion provision, nor the public policy behind the guaranty act automatically shift liability from the association to the nearest solvent insurer when liability does not rest there already. As this court repeatedly has noted, "[a]lthough the association correctly states that it is a nonprofit entity whose resources are to be distributed carefully, this court . . . has recognized that [t]he association was established for the purpose of providing a limited form of protection for

policyholders and claimants in the event of insurer insolvency. *Hunnihan* v. *Mattatuck Mfg. Co.*, [supra, 243 Conn. 451]. The association's statutory mandate, and sole reason for existence, is to provide compensation for those whose remedy otherwise would be thwarted by insurer insolvency. *Doucette* v. *Pomes*, [247 Conn. 442, 459–60, 724 A.2d 481 (1999)]; see also General Statutes § 38a-841 (1) (a) ([the] association shall . . . [b]e obligated to the extent of the covered claims existing prior to the determination of [insurer] insolvency and arising within thirty days after the determination of insolvency). Additionally, the legislature has accounted for the possibility that the association might, at times, incur substantial liability. See General Statutes § 38a-841 (1) (c) ([i]f the maximum assessment, together with the other assets of said association in any account, does not provide in any one year in any account an amount sufficient to make all necessary payments from that account, the funds available may be prorated and the unpaid portion shall be paid as soon thereafter as funds become available)." (Internal quotation marks omitted.) *Connecticut Ins. Guaranty Assn.* v. *State*, 278 Conn. 77, 85–86, 896 A.2d 747 (2006). Indeed, we also have noted that "[i]n general, the legislative objective was to make the [association] liable to the same extent that the insolvent insurer would have been liable under its policy. . . . *Connecticut Ins. Guaranty Assn.* v. *Union Carbide Corp.*, 217 Conn. 371, 390, 585 A.2d 1216 (1991) (association may not use exhaustion or nonduplication of recovery provisions to avoid its responsibilities for paying claims that should have been covered by insolvent excess insurer)." (Internal quotation marks omitted.) *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, supra, 278 Conn. 791–92. Thus, an interpretation of the guaranty act that automatically would shift liability from the association to the nearest solvent insurer when liability does not rest there already

would do violence to the legislatively established scheme.

We also are not persuaded by the association's contention that American Economy is liable because the regulation, as applied to these facts, is inconsistent with the guaranty act. First, as we have noted, the guaranty act does not conflict explicitly with the government owned vehicle exclusion expressed in the regulation. Second, we presume that when the legislature enacted the guaranty act, it was aware of and considered the language contained in the other provisions of the insurance code. See, e.g., *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003) ("legislature is always presumed to have created a harmonious and consistent body of law" [internal quotation marks omitted]). The government owned vehicle exclusion had been in effect for several years before the legislature enacted the guaranty act; see footnote 10 of this opinion; Public Acts 1971, No. 466; and still was in effect when the legislature amended the guaranty act on numerous occasions over a significant time span.

It is neither absurd nor unworkable to conclude that, when a town has chosen to manage its risk by seeking insurance through a carrier rather than self-insuring, the legislature intended that the association would provide limited coverage if the town's carrier is declared insolvent. Indeed, we see no incongruity with the policy underlying both the uninsured motorist statute and the guaranty act and the availability of the association's resources in such cases.[17] If the municipality chooses

[17] Moreover, to the extent that the guaranty act and the regulation ostensibly could be read to conflict, it is well established that, "[i]f two statutes appear to be in conflict but can be construed as consistent with each other, then the court should give effect to both. . . . If a court can by any fair interpretation find a reasonable field of operation for two allegedly inconsistent statutes, without destroying or preventing their evident meaning and intent, it is the duty of the court to do so." (Citations omitted; internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 157, 788 A.2d 1158 (2002). By rejecting the association's contentions,

to purchase a policy so that an insurer will be responsible for claims, it pays indirectly into the association's fund through its policy premiums and becomes a policyholder. *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 451. As we have noted many times, "[t]he association was established for the purpose of providing . . . protection for policyholders and claimants in the event of insurer insolvency." (Internal quotation marks omitted.) *Connecticut Ins. Guaranty Assn.* v. *State*, supra, 278 Conn. 85–86. We therefore decline, through a tortured construction or wholesale invalidation of the exclusion clearly expressed in a regulation that validly was promulgated pursuant to the uninsured motorist statute, to shift the burden to pay claims against an insolvent insurer from the association to another still solvent insurer that otherwise is not liable.

To the extent that the association believes that its funds should not be utilized in this matter or that the government owned vehicle exclusion is unwise as it pertains to government entities that do seek insurance coverage, this is a matter for the legislature. "The automobile liability insurance business is one which is extensively regulated . . . and judicial revision of the terms upon which such policies are issued may produce extensive repercussions throughout the insurance industry of the state." (Citation omitted; internal quotation marks omitted.) *Wilson* v. *Security Ins. Co.*, supra, 213 Conn. 539. In view of the very broad grant of regulatory authority to the insurance commissioner, we are not persuaded that the commissioner was without authority to adopt the exclusion for government owned vehicles in the regulation, § 38a-334-6.

The judgment is affirmed.

In this opinion the other justices concurred.

this court construes as consistent with each other the guaranty act, the uninsured motorist statute and the regulation.