WILLIE FRANKLIN *v.* SUPERIOR CASTING ET AL.
(SC 18501)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Harper, Js.

Argued April 25—officially released August 30, 2011

*Mark D. Robins*, pro hac vice, with whom was *Joseph J. Passaretti, Jr.*, for the appellant (defendant Guaranty Fund Management Services).

*Robert F. Carter*, for the appellees (substitute plaintiffs).

*Lawrence G. Widem*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, former attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellee (defendant second injury fund).

*James D. Moran, Jr.*, with whom was *Maribeth M. McGloin*, for the appellees (named defendant et al.).

*Opinion*

HARPER, J. Under the Workers' Compensation Act, General Statutes § 31-275 et seq., the last insurer on a risk for which other insurers also bear some liability

is deemed initially liable for payment to the injured employee, with the right to recover proportional reimbursement from the other insurers. See General Statutes § 31-299b.[1] The sole issue in this appeal is whether § 31-299b applies to the Connecticut Insurance Guarantee Association (association)[2] when it assumes liability for the obligations of an insolvent workers' compensation insurer that would have been the last insurer on a risk. The defendant Guaranty Fund Management Services,[3] on behalf of the association, appeals from the

[1] General Statutes § 31-299b provides in relevant part: "If an employee suffers an injury or disease for which compensation is found by the [workers' compensation] commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, shall be initially liable for the payment of such compensation. The commissioner shall, within a reasonable period of time after issuing an award, on the basis of the record of the hearing, determine whether prior employers, or their insurers, are liable for a portion of such compensation and the extent of their liability. If prior employers are found to be so liable, the commissioner shall order such employers or their insurers to reimburse the initially liable employer or insurer according to the proportion of their liability. . . ."

[2] "The association is a nonprofit unincorporated legal entity created by General Statutes § 38-276 [now General Statutes § 38a-839] and composed of all insurers licensed to transact business in this state that write any kind of direct insurance, except for those specifically excluded from the application of the Connecticut Insurance Guaranty Association Act by General Statutes § 38-274 [now General Statutes § 38a-837]." (Internal quotation marks omitted.) *Giglio* v. *American Economy Ins. Co.*, 278 Conn. 794, 797 n.1, 900 A.2d 27 (2006). "The association was established in order to reimburse, to a limited extent, covered claims against insolvent insurers." *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 439 n.1, 705 A.2d 1012 (1997).

[3] Also named as defendants in the proceedings before the workers' compensation commissioner were: Superior Casting, the employer of the plaintiff, Willie Franklin; Liberty Mutual Insurance Company, one of Superior Casting's workers' compensation insurers; and the second injury fund. The workers' compensation commissioner determined that the second injury fund had no exposure and dismissed the claim against it. The second injury fund, Liberty Mutual Insurance Company and the plaintiff all filed briefs in this court in support of the workers' compensation review board's decision. For convenience, we refer to Guaranty Fund Management Services as the defendant in this opinion.

decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) holding the association initially liable for payment of benefits to the plaintiff, Willie Franklin (claimant),[4] as the last insurer on the risk.[5] The defendant claims that deeming the association liable through application of § 31-299b conflicts with the requirement under the Connecticut Insurance Guaranty Association Act (guaranty act), General Statutes § 38a-836 et seq., that other insurance policies covering the same claim must be exhausted before recovery is permitted from the association. See General Statutes § 38a-845 (a).[6] The defendant contends that, in light of this conflict, the solvent insurer on the risk bears all liability for the claim. We agree with the board that holding the association liable for an insolvent insurer's obligations under § 31-299b as the last insurer on the risk does not conflict with § 38a-845. Accordingly, we affirm the board's decision.

The record reveals the following undisputed facts and procedural history. From January, 1963, through

---

[4] The claimant died during the pendency of these proceedings. The claimant's attorney filed a suggestion of death, as well as a motion to substitute the claimant's widow and the executrix of his estate as plaintiffs in this action, which this court granted.

[5] The defendant appealed from the board's decision to the Appellate Court, pursuant to General Statutes § 31-301b, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[6] General Statutes § 38a-845 (a) provides: "Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, which is also a covered claim under sections 38a-836 to 38a-853, inclusive, shall exhaust first his rights under such policy. Any amount payable on a covered claim under said sections shall be reduced by the amount recoverable under the claimant's insurance policy or chapter 568."

We note that technical changes were made to the statute's subsections since the relevant time of the proceedings in this case. See Public Acts 2010, No. 10-5, § 44. For purposes of clarity and convenience, we use the designation of those provisions in the current revision of the statute.

October, 1977, the claimant was employed by Superior Casting (Superior). In 2003, the claimant was diagnosed with silicosis, caused by having breathed in sand dust and chemical fumes during that employment. As a result of this condition, the claimant was unable to work and had a 40 percent permanent partial impairment to both lungs. Following his diagnosis, the claimant timely filed a claim for workers' compensation benefits alleging an occupational disease brought about by repetitive trauma.

During the course of the claimant's employment, Superior's workers' compensation liability was covered by two insurers. Liberty Mutual Insurance Company (Liberty Mutual) insured the period from January, 1963, through August, 13, 1964. American Mutual Liability Insurance Company (American Mutual) insured the period from August 14, 1964, through October, 1977. Sometime after the claimant terminated his employment with Superior, American Mutual was declared insolvent. As a result, the association became liable for certain American Mutual obligations to the extent that such obligations were covered claims under the guaranty act.

Because the claimant's repetitive trauma occurred during the periods of both insurers' coverage, the commissioner deemed the apportionment provision under § 31-299b applicable. See footnote 1 of this opinion. The commissioner determined that the association, pursuant to American Mutual's obligation as the last insurer on the risk, was initially liable for any payment of benefits due the claimant. The commissioner further ordered Liberty Mutual to reimburse the association for Liberty Mutual's proportionate share—11.26 percent—of retroactive benefits, as well as future benefits properly presented by the association. In so concluding, the commissioner rejected the defendant's contentions that the association could not be held liable for any payment

under § 31-299b because such payment would benefit a solvent insurer, Liberty Mutual, and because benefits under § 31-299b are not a covered claim under the guaranty act.

The defendant thereafter appealed to the board, apparently expanding its objections to include a contention that the association's liability was barred as a result of application of the exhaustion requirement of the guaranty act. The board rejected each of the defendant's claims and affirmed the commissioner's decision. This appeal followed.

On appeal, the defendant concedes that the benefits due under American Mutual's policy constitute a covered claim under the guaranty act. Instead, it focuses exclusively on the exhaustion provision of that act, § 38a-845 (a), which the defendant contends conflicts with, and therefore negates, any obligation the association otherwise might have under § 31-299b. The defendant contends that § 38a-845 (a) *first* requires the exhaustion of the policy coverage of a solvent insurer when there is overlapping coverage for a covered claim before turning to the association. The defendant asserts that there is such overlapping coverage in the present case by virtue of: (1) the requirement under the Workers' Compensation Act that insurers must cover the employer's entire liability; and (2) the terms of § 31-299b, under which the association's initial liability includes a portion for which Liberty Mutual must reimburse it. According to the defendant, because Liberty Mutual's coverage first must be exhausted under § 38a-845 (a), there is a conflict between that requirement and the mandate in § 31-299b that imposes initial liability on the association to administer the entire claim, subject to the right of apportionment. In light of this conflict, the defendant contends that the association bears no liability and that Liberty Mutual assumes all liability for the claim.

In support of its position, the defendant principally relies on *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 448, 705 A.2d 1012 (1997), a case in which this court had concluded that a solvent insurer that was the last insurer on a risk could not seek apportionment from the association under § 31-299b. The defendant posits that holding the solvent insurer in the present case, Liberty Mutual, liable for the entire claim renders the only result that is consistent with *Hunnihan*, namely, that there can be no apportionment between the association and an insurer. The defendant contends that shifting liability to solvent insurers is consistent with the policies underlying the guaranty act, protecting the association's limited assets and the interests of consumers.

We conclude that the defendant's reasoning is unsupported by the text of the pertinent acts and our case law interpreting them. We agree with the board that the exhaustion requirement does not conflict with the association's assumption of American Mutual's obligations under the apportionment rules of the Workers' Compensation Act.

Well established dictates of statutory construction guide us in reaching this decision. See General Statutes § 1-2z (setting forth plain meaning rule and permitting resort to extratextual sources only when statute is ambiguous or plain meaning yields bizarre or unworkable result); *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 765, 6 A.3d 726 (2010) (setting forth process under which "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature" [internal quotation marks omitted]). The present case requires construction of two statutory schemes; one that the board does not directly administer, and the other that the board has not subjected to a time-tested interpretation. Accordingly, no special deference is afforded to the board's interpretations of the provisions at issue,

and this court applies plenary review. *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 631, 6 A.3d 60 (2010); *Esposito* v. *Simkins Industries, Inc.*, 286 Conn. 319, 326–27, 943 A.2d 456 (2008).

Section 38a-845 (a) provides in relevant part: "Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, which is also a covered claim under sections 38a-836 to 38a-853, inclusive [the guaranty act], shall exhaust first his rights under such policy. . . ." As this text indicates, a covered claim under the guaranty act is a predicate to the application of this provision. Although the defendant concedes in its appeal to this court that the claim under the American Mutual policy in the present case is a covered claim, this concession glosses over important legal implications of this fact under our case law that undermine the defendant's reliance on that case law. Therefore, before examining the limitation imposed under the exhaustion requirement, we first explain the general parameters for the association's liability. See *Potvin* v. *Lincoln Service & Equipment Co.*, supra, 298 Conn. 659 ("[t]he [g]uaranty [a]ct's definition of covered claim must be understood in the context of the statutes governing the underlying insurance policies [which] it protects" [internal quotation marks omitted]).

Our case law firmly establishes that the association's liability is dictated exclusively by the guaranty act. Id. ("[t]he association is a creature of statute, and any basis for liability must be found within the provisions of the guaranty act, which define the scope and extent of the association's liability"); *Esposito* v. *Simkins Industries, Inc.*, supra, 286 Conn. 338 ("the association's liability is dictated by the guaranty act"). That act dictates that the association only may be deemed obligated to pay a " '[c]overed claim,' " which is defined generally as "an unpaid claim . . . which arises out of and is

within the coverage and subject to the applicable limits of an insurance policy to which sections 38a-836 to 38a-853, inclusive, apply issued by an insurer, if such insurer becomes an insolvent insurer . . . ." General Statutes § 38a-838 (5). Where there is a covered claim, the "association shall . . . be deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent . . . ." General Statutes § 38a-841 (a) (2).

Workers' compensation policies are one of three categories to which the guaranty act applies. See General Statutes § 38a-839. The Workers' Compensation Act determines the scope of coverage of such policies, because employers are statutorily mandated to insure, or self-insure, to the full extent of all benefits to which a claimant is entitled under that act. See General Statutes § 31-284 (b) (requiring employer to "insure his full liability under this chapter"); General Statutes § 31-340 (requiring insurance contract for employer's "liability under this chapter" to be contract for benefit of employee). Thus, the Workers' Compensation Act is relevant only to the extent that it determines the obligations of the insolvent insurer, which in turn is a predicate to the assumption of the association's liability for a covered claim. See *Esposito* v. *Simkins Industries, Inc.*, supra, 286 Conn. 338–39 ("In *Doucette* [v. *Pomes*, 247 Conn. 442, 724 A.2d 481 (1999)], our analysis began and ended with the guaranty act; we did not examine the association's liability under the Workers' Compensation Act or tort law for that matter, because the association's liability is dictated by the guaranty act. The Workers' Compensation Act would be relevant in any given case only to the extent that it shed light on whether the insolvent insurer, whose obligation the association assumed, would be liable under that act."). In the present case, American Mutual's policy would have obli-

gated it as the last insurer on the risk to assume initial liability for the claimant's benefits under § 31-299b had it not been insolvent. Therefore, these benefits constitute a covered claim for which the association is deemed fully liable unless this liability is excluded or limited under the guaranty act.

An otherwise covered claim is excluded from coverage if it is brought by, or asserted for the benefit of, another insurer. General Statutes § 38a-838 (5). Significantly, this court twice has examined this exclusion in connection with the apportionment requirements of § 31-299b. In *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 438, a solvent insurer that was the last insurer on the risk sought reimbursement from the association for a prior, then insolvent, insurer's share of the risk. Because the claim was brought by, and solely for the benefit of, the solvent insurer, this court agreed with the association that the claim fell within the statutory exclusion to a covered claim under the guaranty act. Id., 447–50. Conversely, in *Esposito* v. *Simkins Industries, Inc.*, supra, 286 Conn. 321–22, a self-insured employer that initially was liable for the workers' compensation claim as the last insurer on the risk sought reimbursement from the association for an insolvent insurance carrier's share of the benefits. This court concluded that apportionment was permitted because the employer was not an insurer within the meaning of the statutory exclusion to covered claims. Id., 338–39. Like *Esposito*, in the present case, payment is not being sought from the association by an insurer. Therefore, the benefits in the present case are not excluded from the scope of a covered claim for which the association is deemed liable.

Where a claim fully satisfies the definition of a covered claim, the exhaustion requirement nonetheless may impose a limitation on the association's liability. Section 38a-845 (a) provides in its entirety: "Any person

having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, which is also a covered claim under sections 38a-836 to 38a-853, inclusive, shall exhaust first his rights under such policy. Any amount payable on a covered claim under said sections shall be reduced by the amount recoverable under the claimant's insurance policy or chapter 568 [the Workers' Compensation Act]." As this court previously has recognized, an important conclusion readily can be drawn from this text. "The evident purpose of providing in [General Statutes] § 38-282 (1) [now § 38a-845 (a)] for a reduction of a covered claim 'by the amount of any recovery' from other available insurance was to prevent a person from twice receiving benefits for the same loss or otherwise obtaining a windfall, not to reduce the amount of a claim for a loss that remains partially unsatisfied." *Connecticut Ins. Guaranty Assn.* v. *Union Carbide Corp.*, 217 Conn. 371, 388, 585 A.2d 1216 (1991); accord id., 390 ("[w]e agree with those courts holding that statutory provisions similar to § 38-282 [1] [now § 38a-845 (a)] were intended to apply only to prevent duplicate or windfall recoveries for losses sustained by an insured or a claimant resulting from insurer insolvency").[7] Thus,

---

[7] More recent cases similarly construe the effect of this provision. See, e.g., *Zhou* v. *Jennifer Mall Restaurant, Inc.*, 699 A.2d 348, 352 (D.C. App. 1997) (The court stated when interpreting the same language: "The nonduplication of recovery and exhaustion requirements prevent . . . a situation in which an insured collects the amount of the total loss from one insurance company and then gets an additional sum from the [association]. . . . Thus, the provision prevents claimants from double recovery or windfall by virtue of an insurance company's insolvency." [Citation omitted; internal quotation marks omitted.]); *Exeter Hospital, Inc.* v. *New Hampshire Ins. Guaranty Assn.*, 158 N.H. 400, 404, 965 A.2d 1159 (2009) (court stating when interpreting same language: "[this] provision prevents claimants from double recovery or windfall by virtue of an insurance company's insolvency" [internal quotation marks omitted]). As this court previously has explained: "Sister state decisions are helpful in construing and applying the guaranty act because it is based on a model statute drafted by the National Association of Insurance Commissioners that has been adopted in substantial part by the legislatures of many of our sister states . . . ." (Internal quotation marks

the exhaustion requirement is not intended to wholly negate the association's liability.

Indeed, in *Esposito* v. *Simkins Industries, Inc.*, supra, 286 Conn. 340, this court squarely rejected the association's claim that the exhaustion provision could operate to relieve it of all liability for an insolvent insurer's obligations under § 31-299b. The association had contended that the self-insuring employer that was last on the risk "was required to seek reimbursement from all the solvent insurers for *their* proportional shares of benefits attributable to their periods of coverage, *and for a similarly proportional share of any benefits that were due from [the employer's insolvent insurer]*." (Emphasis altered.) Id. In rejecting that contention, this court reasoned that "[t]he legislative objective of the guaranty act was to make the association liable to the same extent that the insolvent insurer would have been liable under its policy. *Connecticut Ins. Guaranty Assn.* v. *Union Carbide Corp.*, supra, 217 Conn. 390 (association may not use exhaustion or nonduplication of recovery provisions to avoid responsibilities for paying claims that should have been covered by insolvent excess insurer). Accordingly, there is no exhaustion of remedies bar to [the self-insured employer] seeking recovery against the association." *Esposito* v. *Simkins Industries, Inc.*, supra, 340–41.

In an earlier case, this court further had explained with regard to the association's liability: "Neither the limitations of the definition of covered claims, the exhaustion provision, nor the public policy behind the guaranty act automatically shift liability from the association to the nearest solvent insurer when liability does not rest there already." *Giglio* v. *American Economy Ins. Co.*, 278 Conn. 794, 814, 900 A.2d 27 (2006). "[A]n

omitted.) *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 792 n.8, 900 A.2d 18 (2006).

interpretation of the guaranty act that automatically would shift liability from the association to the nearest solvent insurer when liability does not rest there already would do violence to the legislatively established scheme." Id., 815–16. In the present case, under § 31-299b, liability rests with Liberty Mutual only to the extent of its proportionate share of the risk. That proportionate share in turn is dictated by its respective period of policy coverage.

In light of this court's previous interpretation of § 38a-845 (a), several facts underscore why that exhaustion provision does not apply in the present case. Neither the claimant's estate; see footnote 4 of this opinion; nor Superior for that matter, would receive a windfall or duplicative recovery if the association is deemed liable under § 31-299b. The claimant would receive only the benefits due to him under the Workers' Compensation Act, and no more. Cf. *Robinson* v. *Gailno*, 275 Conn. 290, 306, 880 A.2d 127 (2005) ("a claimant satisfies the exhaustion requirement of § 38a-845 [a] by pursuing coverage under her own uninsured motorist policy prior to attempting to collect either from the [state] guaranty fund or the tortfeasor personally"); *Doucette* v. *Pomes*, supra, 247 Conn. 467 (because plaintiff had failed to exhaust limits of his uninsured motorist policy he would be barred from recovering from association for defendant's insolvent insurer for injuries arising from motor vehicle accident). Indeed, it is clear from the periods of coverage under the Liberty Mutual and American Mutual policies that there is no duplication of coverage. Liberty Mutual's policy covers the period of January, 1963, through August, 13, 1964; American Mutual's policy covers the period of August 14, 1964, through October, 1977.

Nor is there "overlapping" coverage for this claim, as the defendant opines. Section 31-299b mandates that the last insurer on the risk, which was American Mutual,

pay the claimant. There is no common-law joint and several liability among Superior's insurers that would allow the claimant to choose from which insurer he will recover. See *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 300 n.13, 819 A.2d 260 (2003); see generally *Viera* v. *Cohen*, 283 Conn. 412, 421–22, 927 A.2d 843 (2007) (distinguishing effect of common-law joint and several liability from effect of apportionment). The mere fact that the association is entitled to reimbursement for the period that Liberty Mutual insured does not render the coverage overlapping. The reimbursement arises from the administration of the claim, not substantive liability for the claim.

Nonetheless, the defendant points to the following statements in *Esposito* to support its view of the exhaustion provision: "[W]e note that § 38a-845 imposes no exhaustion obligation in the present case because [the self-insuring employer] has no rights under an insurance policy with any of the insurers that were not already satisfied. . . . The record reflects that those policies provided coverage to [the self-insuring employer] as an insured for its workers' compensation claims for insurers that fully honored their obligations under their respective policies." (Citation omitted.) *Esposito* v. *Simkins Industries, Inc.*, supra, 286 Conn. 340. The defendant suggests that these statements indicate that the exhaustion provision would apply to § 31-299b if the solvent insurers had not yet fully met their policy obligations, as in the present case. We disagree. The context in which these statements were made, wherein we expressly rejected the association's argument that it could shift its liability to solvent insurers, belies the defendant's interpretation.

Although the defendant also contends that its interpretation best serves the legislature's desire to preserve the resources of the guaranty fund, this court also has recognized that "the legislature has accounted for the

possibility that the association might, at times, incur substantial liability. See General Statutes [Rev. to 2005] § 38a-841 (1) (c) [now § 38a-841 (a) (3)] . . . ." (Internal quotation marks omitted.) *Giglio* v. *American Economy Ins. Co.*, supra, 278 Conn. 815. "To the extent that the association believes that its funds should not be utilized in this matter . . . this is a matter for the legislature." Id., 817. Indeed, in 2005, the legislature amended § 31-299b to exempt the second injury fund from liability for claims subject to apportionment and to reallocate the liability that the fund would have incurred among other insurers or employers on the risk. See Public Acts 2005, No. 05-199, § 1.[8] Had the legislature similarly wanted to exempt the association in whole or in part, it readily could have done so. Although the defendant contends that the legislature would have had no need to include an exemption for the association in light of this court's decision in *Hunnihan*, that decision clearly did not wholly bar the association's liability. Our decision in *Esposito* affirming the association's liability in that case is a clear reflection of that fact.

We recognize, however, that application of the guaranty scheme under different facts can yield seemingly inconsistent results. An insolvent insurer's position in time on a risk may determine whether the association will be liable. Thus, in the present case, where American Mutual was the last insurer on the risk, both Liberty

---

[8] In 2005, the following language was added to § 31-299b: "For purposes of this section, the Second Injury Fund shall not be deemed an employer or an insurer and shall be exempt from any liability. The amount of any compensation for which the Second Injury Fund would be liable except for the exemption provided under this section shall be reallocated among any other employers, or their insurers, who are liable for such compensation according to a ratio, the numerator of which is the percentage of the total compensation for which an employer, or its insurer, is liable and the denominator of which is the total percentage of liability of all employers, or their insurers, excluding the percentage that would have been attributable to the Second Injury Fund, for such compensation." Public Acts 2005, No. 05-199, § 1.

Mutual and the association are liable for their respective proportionate shares. Had American Mutual been the insurer for the earlier period of coverage, Liberty Mutual initially would have been liable for the entire claim and, under *Hunnihan*, could have sought no reimbursement from the association. Similar inconsistent results also can flow from the nature of the party seeking reimbursement. If Superior had self-insured for the last period on the risk and American Mutual insured the earlier period of coverage, under *Esposito*, Superior would be initially liable but could seek reimbursement from the association. These inconsistencies flow, however, not from our interpretation of the exhaustion or apportionment provisions, but from the guaranty act's definition of covered claims. This court has no authority to construe the exhaustion and apportionment provisions contrary to their express terms simply to achieve the most uniform results. The legislature has provided clear evidence that the association must share liability for workers' compensation claims, as long as such claims are covered claims under the guaranty act. The board's conclusion in the present case is consistent with that clear expression.

Finally, it is worth noting that, where § 38a-845 (a) applies, its effect is to reduce the association's liability in the amount that another insurer is liable for the same claim. The practical result in the present case achieves the same end. The commissioner's decision requires Liberty Mutual to reimburse the association for Liberty Mutual's proportionate share.

The decision of the workers' compensation review board is affirmed.

In this opinion the other justices concurred.