JEFFREY HUNNIHAN *v.* MATTATUCK
MANUFACTURING
COMPANY ET AL.
(SC 15751)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued October 30—officially released December 30, 1997

*Joseph C. Tanski*, pro hac vice, with whom were *Joseph C. Marrow*, pro hac vice, *Henry Snyder* and, on the brief, *Margaret A. Triolo*, for the appellant (defendant Connecticut Insurance Guaranty Association).

*Timothy E. Welsh*, for the appellee (defendant Fireman's Fund Insurance Company).

*Opinion*

KATZ, J. The principal issue in this administrative appeal is whether the defendant Connecticut Insurance Guaranty Association (association),[1] is obligated to pay

---

[1] The association is a nonprofit legal entity established by General Statutes § 38a-839 and governed by the Connecticut Insurance Guaranty Association Act, which is codified at General Statutes § 38a-836 et seq. The association was established in order to reimburse, to a limited extent, covered claims against insolvent insurers.

a proportionate contribution toward a workers' compensation award when a former insurer from whom reimbursement otherwise could be sought is insolvent.[2] The association appeals from the decision of the compensation review board (board) affirming the decision by the workers' compensation commissioner for the fifth district (commissioner) ordering the association to reimburse a codefendant, Fireman's Fund Insurance Company (Fireman's Fund), for a portion of the workers' compensation award paid by Fireman's Fund to the plaintiff, Jeffrey Hunnihan.[3] The amount ordered to be reimbursed corresponds to the period of the plaintiff's employment during which the now insolvent

[2] A right of reimbursement is provided for by General Statutes § 31-299b, which also imposes initial liability upon the last employer or insurer for a workers' compensation claim relating to a period of time during which there was more than one employer or insurer liable for the injury. Section 31-299b provides: "Initial liability of last employer. Reimbursement. If an employee suffers an injury or disease for which compensation is found by the commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, shall be initially liable for the payment of such compensation. The commissioner shall, within a reasonable period of time after issuing an award, on the basis of the record of the hearing, determine whether prior employers, or their insurers, are liable for a portion of such compensation and the extent of their liability. If prior employers are found to be so liable, the commissioner shall order such employers or their insurers to reimburse the initially liable employer or insurer according to the proportion of their liability. Reimbursement shall be made within ten days of the commissioner's order with interest, from the date of the initial payment, at twelve per cent per annum. If no appeal from the commissioner's order is taken by any employer or insurer within ten days, the order shall be final and may be enforced in the same manner as a judgment of the Superior Court."

The association is a defendant in this action because by the time the last insurance carrier for the plaintiff's employer sought reimbursement pursuant to § 31-299b from the employer's previous insurance carriers for the compensation award that it had paid to the plaintiff, one of those carriers, American Mutual Insurance Company, had been declared insolvent, and the association had become obligated to the extent of covered claims against the insolvent insurer.

[3] The association appealed from the decision of the board to the Appellate Court pursuant to General Statutes § 31-301b. Thereafter, we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

insurer, the defendant American Mutual Insurance Company (American Mutual), was the workers' compensation insurance carrier for the plaintiff's employer. We reverse the decision of the board.

The facts relevant to this appeal are undisputed. While employed by the named defendant, Mattatuck Manufacturing Company (Mattatuck), between October 14, 1970, and August 18, 1987, the plaintiff sustained a repetitive trauma injury to his back caused by his employment. During that period, Mattatuck was insured for workers' compensation liability by four different carriers. The defendant Liberty Mutual Insurance Company (Liberty) was Mattatuck's insurer for a five year period commencing in 1970 and ending in 1975; the defendant Travelers Insurance Company (Travelers) was the insurer for a five year period commencing in 1976 and ending in 1980; American Mutual was the insurer for a six year period commencing in 1981 and ending in 1987; and Fireman's Fund was the insurer for a one year period commencing in 1987 and ending in 1988. Fireman's Fund, as the last insurer on the risk, became initially liable for the plaintiff's award pursuant to General Statutes § 31-299b and paid benefits to him for a period of 104 weeks totaling $54,457.39. Thereafter, liability was transferred to the defendant second injury fund pursuant to General Statutes § 31-349 (b).

Fireman's Fund then sought reimbursement pursuant to § 31-299b from Mattatuck's previous insurers for their proportionate shares of the benefits it had paid to the plaintiff. Both Liberty and Travelers agreed to reimburse Fireman's Fund for their proportionate shares of the benefits paid. American Mutual, however, on March 9, 1989, had been adjudicated insolvent as defined by General Statutes § 38a-838 (7) of the Connecticut Insurance Guaranty Association Act (guaranty act). Thereafter, in accordance with General Statutes

§ 38a-841, the association became obligated to pay covered claims against American Mutual. Consequently, the commissioner ordered the association to reimburse Fireman's Fund in the amount of $19,060. The association, however, appearing on behalf of American Mutual, refused to reimburse Fireman's Fund, and pursuant to General Statutes § 31-301 appealed from the commissioner's order to the board. The board, on October 30, 1996, affirmed the award ordered by the commissioner and this appeal followed.

The association bases its appeal primarily upon two arguments. First, the association contends that the Fireman's Fund claim is not reimbursable because the association is authorized to pay only covered claims, and the Fireman's Fund claim does not satisfy the requirements of a "covered claim" as that term is defined by the guaranty act. Second, the association claims that the workers' compensation commission (commission) lacked subject matter jurisdiction to order reimbursement by the association. We agree with the association with regard to the first issue, but disagree with it as to its second argument.

I

We address the jurisdictional claim first because if the commission lacked subject matter jurisdiction over the dispute when it ordered reimbursement, we would not reach the association's second claim that the order was improper under the guaranty act. The substance of this claim is that the limited subject matter jurisdiction of the commission does not authorize it to order reimbursement by the association because such an order requires a determination by the commission that the claim to be reimbursed is a covered claim within the meaning of § 38a-838 (6) of the guaranty act. That determination cannot be made by the commission, the

association argues, because the Workers' Compensation Act limits the commission's jurisdiction to claims and questions arising only under that act.[4] Although the association acknowledges that the commission may interpret other statutory provisions as incidentally necessary to its resolution of claims arising under the Workers' Compensation Act,[5] it argues that in this case the required interpretation of the guaranty act is not merely incidental to the issue, but, rather, constitutes the central issue in the case. Fireman's Fund, on the other hand, contends that because the legislature inserted into the Workers' Compensation Act, through General Statutes § 31-355 (e),[6] the association's obligations in relation to workers' compensation claims, it clearly intended that the association's obligations be determined by workers' compensation commissioners. We agree with Fireman's Fund.

The association is correct in its contention that the subject matter jurisdiction of the commission is circumscribed by the agency's enabling legislation. "Administrative agencies [such as the commission] are tribunals

[4] The Workers' Compensation Act in its entirety is codified at General Statutes §§ 31-275 through 31-355a.

[5] The subject matter jurisdiction of the commission in previous cases has encompassed the interpretation of statutory provisions codified outside the Workers' Compensation Act when such interpretations have been incidentally necessary to the resolution of a case arising under that act. See *Wonacott* v. *Bartlett Nuclear, Inc.*, 15 Conn. Workers' Comp. Rev. Op. 334 (1996) (board interpreted Internal Revenue Code in determining wages under General Statutes § 31-310); *Pascarelli* v. *Moliterno Stone Sales*, 14 Conn. Workers' Comp. Rev. Op. 328 (1995) (board interpreted Bankruptcy Code in determining whether relief from stay required to allow proceedings against insurer); *Versage* v. *Kurt Volk, Inc.*, 11 Conn. Workers' Comp. Rev. Op. 253 (1993) (board interpreted provision of guaranty act in reviewing award of interest on disability payments pursuant to General Statutes § 31-300).

[6] General Statutes § 31-355 (e) provides: "Notwithstanding the provisions of subsections (a) to (d), inclusive, of this section, whenever the employer's insurer has been determined to be insolvent, as defined in section 38a-838, payments required under this section shall be the obligation of the Connecticut Insurance Guaranty Association pursuant to the provisions of sections 38a-836 to 38a-853, inclusive."

of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves." *Castro* v. *Viera,* 207 Conn. 420, 428, 541 A.2d 1216 (1988). " 'It is a familiar principle that a court which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation.' " Id., 427–28. Therefore, resolution of the jurisdictional issue here is a matter of statutory interpretation over which our review is plenary. *State* v. *Burns,* 236 Conn. 18, 22, 670 A.2d 851 (1996).

In interpreting statutes, we are guided by "well established tenets of statutory construction. [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Citations omitted; internal quotation marks omitted.) *Conway* v. *Wilton,* 238 Conn. 653, 663–64, 680 A.2d 242 (1996).

Our analysis begins, therefore, with the language of the relevant provisions. General Statutes § 31-278 sets forth the powers and duties of commissioners. Pursuant to that section, commissioners "shall have all powers necessary to enable [them] to perform the duties imposed upon [them] by the provisions of [the Workers' Compensation Act]," and each commissioner is

directed to "hear all claims and questions arising under [the act] . . . ." General Statutes § 31-355 (e) of the Workers' Compensation Act directly refers to the association, providing that "whenever the employer's insurer has been determined to be insolvent . . . payments required under [this section] shall be the obligation of the Connecticut Insurance Guaranty Association pursuant to the provisions of sections 38a-836 to 38a-853, inclusive."

Although the association contends that these provisions do not create subject matter jurisdiction in the commission to allow it to resolve issues central to the case that do not arise under the Workers' Compensation Act, it does not dispute that this case originated as a workers' compensation claim. Instead, its argument appears to be that at a certain stage in the present litigation, presumably after the commissioner apportioned liability among the prior insurers, resolution of the case ceased to turn upon provisions of the Workers' Compensation Act, and became dependent upon an interpretation of the guaranty act.

While it may be true that in the final stages of this litigation resolution of the remaining claim required the commissioner to interpret a provision of the guaranty act, it is not necessarily true that that task removed the case from the operation of § 31-278. In fact, § 31-355 (e) suggests otherwise. The insertion in § 31-355 (e) delineating the association's obligations under the Workers' Compensation Act reflects the legislature's intent for the commission to have jurisdiction to adjudicate claims against the association originating under that act. Otherwise, it would not have included instruction regarding the association's responsibilities under the Workers' Compensation Act at all.

Furthermore, it is important to recognize that when a claim originates under the Workers' Compensation

Act and at some point during the proceedings it becomes necessary for the commission to interpret provisions of other enactments in order to resolve the claim, the purposes and public policy concerns underlying the Workers' Compensation Act nevertheless continue to be implicated until a conclusion is reached. If jurisdiction were found not to exist in such circumstances and the commission was precluded from seeing such claims through to their conclusion, the result would be to thwart the operation of the Workers' Compensation Act and the public policies underlying it. A case that had arisen under the Workers' Compensation Act and proceeded through many stages under the jurisdiction of the commission would suddenly be called to a halt and the parties would be left to pursue the final resolution of their claims in another tribunal with jurisdiction over the final element of the controversy. Such a result hardly serves the legislature's goal in enacting this remedial legislation, as recently reiterated in *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 381, 698 A.2d 859 (1997): "The purpose of the Workers' Compensation Act . . . is to provide compensation for injuries arising out of and in the course of employment, regardless of fault. . . . Under the statute, the employee surrenders his right to bring a common law action against the employer, thereby limiting the employer's liability to the statutory amount. . . . In return, the employee is compensated for his or her losses without having to prove liability. . . . In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." (Citations omitted; internal quotation marks omitted.)

Here, because the injured employee plaintiff is no longer directly involved in the dispute, it is not immediately obvious how a determination that jurisdiction exists to enable the commission to resolve this case

will advance the remedial purposes of the Workers' Compensation Act. It may not always be the case, however, that whenever the commission is called upon to interpret a provision of another act, the employee claimant will have already received compensation. If the commission is to function effectively in the manner contemplated by the legislature, it must be able to interpret other acts when necessary in order to resolve cases originating under the Workers' Compensation Act. Any other result would be inconsistent with the remedial public policy underlying the Workers' Compensation Act. Accordingly, we conclude that the commission did not lack subject matter jurisdiction to adjudicate the present case.

II

The association's second claim is that it is not obligated to reimburse Fireman's Fund for American Mutual's proportionate share of the award made to the plaintiff because the Fireman's Fund claim is not a covered claim as defined by § 38a-838 (6) of the guaranty act.[7] Specifically, the association argues that the

---

[7] General Statutes § 38a-838 (6) provides: " 'Covered claim' means an unpaid claim, including, but not limited to, one for unearned premiums, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which sections 38a-836 to 38a-853, inclusive, apply issued by an insurer, if such insurer becomes an insolvent insurer after October 1, 1971, and (a) the claimant is a resident of this state at the time of the insured event; or (b) the claimant is not a resident of this state, but only under all of the following conditions: (i) The insured is a resident of this state at the time of the insured event; (ii) the insolvent insurer is licensed to do business in this state at the time of the insured event; (iii) the state of the claimant's residence has an association similar to the association created by said sections; and (iv) such claimant is refused coverage by such association because the insolvent insurer is not licensed to do business in the state of the claimant's residence at the time of the insured event; or (c) the property from which the claim arises is permanently located in this state, provided the term 'covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which

Fireman's Fund claim falls within the exception to the covered claim definition contained in that section that excludes amounts due insurers "as subrogation recoveries or otherwise." General Statutes § 38a-838 (6) (c). Fireman's Fund, on the other hand, contends that the language relied upon by the association does not absolutely exclude all claims made by insurers and is not directed toward claims based upon the statutory right to reimbursement provided for by § 31-299b. We conclude that the commission improperly determined that the Fireman's Fund claim is a covered claim reimbursable by the association.

We begin by setting forth the applicable standard of review. In an administrative appeal, "[o]ur resolution of [the] issue is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; to the determinations made by an administrative agency. [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion." (Internal quotation marks omitted.) *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 39, 657 A.2d 630 (1995). "Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved

has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool or underwriting association, would be a 'covered claim' may be filed directly with the receiver of the insolvent insurer but in no event shall any such claim be asserted against the insured of such insolvent insurer. A claim shall not be a 'covered claim' if it is filed by or on behalf of an individual who is neither a citizen of the United States nor an alien legally resident in the United States at the time of the insured event, or an entity other than an individual whose principal place of business is not in the United States at the time of the insured event, and it arises out of an accident, occurrence, offense, act, error or omission that takes place outside of the United States, or a loss to property normally located outside of the United States or, if a workers' compensation claim, it arises out of employment outside of the United States . . . ."

in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *State* v. *State Employees' Review Board,* 239 Conn. 638, 645, 687 A.2d 134 (1997). "Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Internal quotation marks omitted.) *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission,* supra, 39. An exception is that "when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Internal quotation marks omitted.) *State* v. *State Employees' Review Board,* supra, 645.

In this case, the issue of whether an insurer's claim against the association is properly reimbursable constitutes a question of law. Furthermore, although statutory interpretation by the commission—an administrative agency—is required, the statute to be interpreted is not part of the Workers' Compensation Act assigned to the commission for enforcement, but, rather, is a provision of the guaranty act. Consequently, although, as we have previously stated, the commission had the authority to interpret § 38a-838 (6), we afford no special deference to its interpretation. Our analysis is guided, however, by the same well established tenets of statutory construction that instructed our resolution of the association's first claim in this appeal. *Conway* v. *Wilton,* supra, 238 Conn. 663.

Pursuant to General Statutes § 38a-841, the association is authorized to pay only covered claims, and must deny all other claims. In order to be reimbursable by the association, a claim against the association must be encompassed within the definition of a covered claim

contained in § 38a-838 (6). The language relied upon by the association as excluding the Fireman's Fund claim provides that "the term 'covered claim' shall not include any amount due any . . . *insurer . . . as subrogation recoveries or otherwise* . . . ." (Emphasis added.) General Statutes § 38a-838 (6) (c). Specifically, because the amount allegedly due is not purported to be based upon a right of subrogation, it is the "or otherwise" language of the statute that the association argues excludes the claim. While the association reads the words "as subrogation recoveries or otherwise" as disjunctive and excluding all claims by insurers, Fireman's Fund argues that the words "or otherwise" merely modify the words "subrogation recoveries," so that only claims based on subrogation or akin to subrogation recoveries are excluded from the definition of a covered claim. Furthermore, Fireman's Fund contends that if the legislature had intended to bar absolutely all claims by insurers, it could have done so explicitly rather than by employing a broad, catchall phrase of uncertain meaning. We agree with the association's reading of § 38a-838 (6).

To begin with, we note that the term "otherwise" is defined by Black's Law Dictionary (6th Ed. 1990) as meaning "[i]n a different manner; in another way, or in other ways." Substituting this definition for the term "otherwise" in the statute demonstrates that not only are subrogation recoveries by an insurer excluded but so are recoveries obtained in a different manner or in other ways. This result comports with the everyday understanding of the phrase "or otherwise," and with a plain reading of § 38a-838 (6). Read this way, the language is very broad, and encompasses all amounts claimed by insurers as reimbursement. Contrary to the assertion by Fireman's Fund that the phrase "or otherwise" is of uncertain meaning, we conclude that the language provides a strong indication that under the

guaranty act, all claims by insurers are excluded from the definition of a covered claim.

The legislative purpose underlying the guaranty act supports our interpretation of § 38a-838 (6). The association was established for the purpose of providing a limited form of protection for policyholders and claimants in the event of insurer insolvency. The protection it provides is limited based upon its status as a nonprofit entity and the method by which it is funded. Specifically, the association is a nonprofit legal entity created by statute to which all persons licensed to transact insurance in the state must belong. See General Statutes §§ 38a-838 (8) and 38a-839.[8] When an insurer is determined to be insolvent under § 38a-838 (7), the association becomes obligated pursuant to § 38a-841, to the extent of covered claims within certain limits. The rates and premiums charged by member insurers are authorized by General Statutes § 38a-849 to include amounts sufficient to recoup the assessments levied upon insurers by the association. Because § 38a-849 provides that insurers may pass on the costs of the assessments made against them by the association, it is in reality policyholders who pay for the protections afforded by the association. Limitations on the association's obligations, therefore, provide another form of protection against increased premiums for policyholders in addition to the primary protection afforded all claimants against losses resulting from insurer insolvency.

[8] The association has other beneficiaries in addition to workers' compensation claimants. The guaranty act, pursuant to General Statutes § 38a-837, applies to "all kinds of direct insurance, except life, title, surety, accident and health, credit, financial guaranty, mortgage guaranty, ocean marine, and flood insurance pursuant to the federal Flood Disaster Protection Act of 1973, as amended." Pursuant to General Statutes § 38a-839, the association "[f]or the purposes of administration and assessment . . . [is] divided into three separate accounts: (a) The workers' compensation insurance account; (b) the automobile insurance account; and (c) an account for all other insurance to which sections 38a-836 to 38a-853, inclusive, apply."

The legislative history confirms that the association was established for the benefit of consumers. At the public hearing held prior to passage of the bill proposing the creation of the association, Peter Kelly, a member of the state insurance department stated: "[T]his bill provides the means to avoid financial loss to Connecticut residents because of the insolvency of [insurance companies]. . . . In the late 1960s . . . [c]onsumers were being hurt and on a personal scale, an insolvency can be ruinous. . . . [The bill] provides the means for all insurance companies assessed to recover from the entire insured residents of this state the cost of such assessments so that it is really not an assessment on a company but an assessment on the entire residents of the state who are insured after the fact. This is spreading the risk amongst all Connecticut residents. . . . I think you must remember that industry is not paying the cost. This bill provides that Connecticut residents will pay the cost. . . . This bill provides for protections of residents of this state and the residents if any assessments are ever made will pay for the cost of such assessments in their future insurance premiums." Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1971 Sess., pp. 55–59.

An interpretation of the covered claim definition that excludes claims by insurers is in accord with this legislative purpose to provide protection for policyholders and claimants from insurer insolvency. The exclusion of claims by insurers leaves the risk of insurer insolvency on the insurance industry. The result is that policyholders, who in effect fund the association, pay only for protection for fellow policyholders and claimants in the event that an insurer becomes insolvent.

Other jurisdictions that have construed similar provisions in their guaranty association acts have also concluded that claims by insurers are excluded by their acts. In *Maxwell Communications* v. *Webb Publishing*

*Co.*, 518 N.W.2d 830, 833 (Minn. 1994), the Minnesota Supreme Court interpreted identical language contained in its guaranty association act as excluding claims by insurers. The language of the Minnesota act provided that " 'a covered claim does not include . . . claims due a reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.' " Id., 832, quoting Minn. Stat. § 60c.09 (2) (2). The Minnesota guaranty association, like our association, was funded by assessments levied on member insurers that were by statute allowed to be passed directly on to policyholders. The court based its decision upon the breadth of the "or otherwise" language employed by the Minnesota act, and upon the public policy sought to be advanced by the act, namely, protection for policyholders as distinct from insurance companies. *Maxwell Communications* v. *Webb Publishing Co.*, supra, 833. The court reasoned that "[b]y excluding claims of what may be described as insurance industry creditors, policyholders pay only for the protection lost by similarly-situated policyholders of insolvent insurers. The members of the insurance industry itself bear the risk of loss of their own direct claims against the insolvent carrier, which they still may assert against the insolvent carrier's receiver. In other words, the Guaranty Act does not provide a solvent substitute for an insolvent insurer, but, rather, is a limited form of protection for the public." Id.; see also *Ursin* v. *Ins. Guaranty Assn.*, 412 So. 2d 1285, 1289 (La. 1981); *Ferrari* v. *Toto*, 383 Mass. 36, 37–38, 417 N.E.2d 427 (1981). We find this reasoning persuasive and equally applicable to an interpretation of § 38a-838 (6) of our own guaranty act.

Although we realize that § 31-299b, by placing initial liability on the last insurer in circumstances where a compensable injury is the responsibility of several insurers, may create a hardship for the last insurer in

the event that a prior insurer has become insolvent, we believe that the conclusion we reach reflects the result intended by the legislature. We express no opinion, however, as to whether the last insurer may seek reapportionment among the remaining solvent insurers by the commission when a prior insurer has been adjudicated insolvent, because that decision is not necessary to the resolution of this appeal.

The decision of the board is reversed and the case is remanded to the board with direction to render a decision in favor of the association.

In this opinion the other justices concurred.