******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN GRAHAM ET AL. *v.* OLSON WOOD
ASSOCIATES, INC., ET AL.
(SC 19626)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued September 20—officially released December 20, 2016*

*Joseph J. Passaretti, Jr.*, with whom, on the brief, was *Ryan D. Ellard*, for the appellant (defendant Connecticut Insurance Guaranty Association).

*Christopher Meisenkothen*, with whom was *Catherine Ferrante*, for the appellee (plaintiff Carmel Graham).

*Diane D. Duhamel*, with whom, on the brief, was *Denise L. Morelli*, for the appellees (defendant F.D. Rich Housing Corporation et al.).

*Opinion*

ROBINSON, J. In this appeal, we consider whether a Workers' Compensation Commissioner may reinstate an employer or insurer as a party to proceedings pending on the asbestos docket of the Workers' Compensation Commission (commission) when the claim against that party was dismissed prior to a determination of the claimant's compensability or date of final exposure. The defendant Connecticut Insurance Guaranty Association (association),[1] appeals[2] from the decision of the Workers' Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner for the Eighth District (commissioner)[3] granting motions joined by the plaintiff Carmel Graham[4] and the defendants F.D. Rich Housing Corporation (F.D. Rich) and The Hartford Insurance Group (The Hartford)[5] to reinstate the association as a party to proceedings brought pursuant to the Workers' Compensation Act (act), General Statutes § 31-275 et seq. On appeal, the association claims that the commissioner improperly reinstated it to the proceedings because: (1) in the absence of a timely appeal to the board, the order dismissing the claim against the association was a final decision entitled to res judicata effect pursuant to General Statutes §§ 31-300[6] and 31-301 (a);[7] and (2) the motions to reinstate the association did not satisfy the standards necessary to open an award pursuant to General Statutes § 31-315.[8] We conclude that the commissioner properly reinstated the association as a party to the underlying proceedings because the commissioner's broad case management authority under General Statutes § 31-298,[9] which extends to cases on the asbestos docket involving the apportionment of liability under General Statutes § 31-299b,[10] permitted him to render a dismissal that was provisional, rather than final, in nature. Accordingly, we affirm the decision of the board.

The record reveals the following undisputed facts and procedural history. In 2006, the plaintiff's decedent, John Graham (decedent); see footnote 4 of this opinion; filed several notices of claim on form 30C with the commission, alleging that he had sustained a lung injury from exposure to asbestos while working for several different employers, including F.D. Rich. The commission assigned the decedent's claims to its asbestos docket for adjudication, after which several informal and preformal hearings took place. After the decedent died in 2008, the plaintiff, his widow, filed a claim for dependent benefits in 2009 that was joined with the original claims.

Subsequently, Reliance Insurance Company (Reliance), one of F.D. Rich's workers' compensation insurance carriers, became insolvent, and its liability transferred statutorily to the association. See footnote 1 of this opinion. On January 26, 2011, the commissioner

conducted a formal hearing that was attended by numerous attorneys representing the decedent's various employers and their respective workers' compensation carriers, along with the association.[11] The commissioner stated that the purpose of the formal hearing was to "clear the room of who doesn't need to be here and then we will get to the meat of the case at the next session." At that hearing, six of the employers, along with the association, moved to dismiss the claims against them for lack of exposure. With no objection from the plaintiff, the commissioner issued a "revised finding and decision" on June 9, 2011, which granted these motions to dismiss.

On November 29, 2012, the commissioner conducted another formal hearing. At that hearing, five of the decedent's other employers and their respective insurers moved to dismiss the claims against them, three of which were granted with the plaintiff's consent. The commissioner then advised counsel for the association, who was present at the hearing as a courtesy to the commission, that: "I think we need to bring [the association] back in, and . . . you will be on the notice for the next hearing." At that hearing, counsel for The Hartford stated that he had reviewed the record and questioned whether the decedent had any claim arising from a very brief period of employment in the first quarter of 1977, during which The Hartford insured F.D. Rich. Counsel for The Hartford stated that his reading of the record "[involved the association again] as a potential party [defendant] and indeed . . . potentially a lead [defendant] under [§ 31-299b]." He asked whether the plaintiff would need further participation from The Hartford, observing that, "if I drop out, then all the more reason for [the association] to become [involved again]." After some additional discussion, counsel for The Hartford agreed to file a motion to dismiss to which the plaintiff could respond after reviewing the record. The commissioner advised counsel for the association that an official request to cite the association back into the proceedings would be forthcoming.

Subsequently, on February 6, 2013, the plaintiff filed a motion asking that the association be "cited back into this claim as a [defendant]," in which she contended that the order dismissing it was "interlocutory and provisional and . . . not an adjudication on the merits of the [plaintiff's] claims or [the association's] defenses." The plaintiff stated that The Hartford had filed a motion to dismiss for lack of causative exposure that, if successful, would have "implicated" the association under § 31-299b because the "next carrier on the risk would [have been] an insolvent carrier," namely, Reliance. On February 14, 2013, The Hartford filed a similar motion, joined by F.D. Rich, seeking to reinstate the association to the proceedings in light of The Hartford's pending motion to dismiss. The association opposed these motions. On January 29, 2014, the commissioner heard

arguments from the parties on these motions at a formal hearing.

On February 4, 2014, the commissioner granted the motions by the plaintiff and The Hartford to reinstate the association as a party to the case, rejecting the association's argument that the order dismissing it from the case was a "binding judgment and that, absent an appeal [to the board] within [twenty] days, it can only be undone by application of [§] 31-315." Specifically, the commissioner rejected the association's reliance on res judicata principles, observing that the record contained no evidence, findings, or formal stipulations that the association "had no liability to the [plaintiff]."[12] He emphasized that, in "asbestos cases there are often so many potential [defendants] that the administrative preference for 'culling the herd' prior to a formal hearing is understandable. However, until the date of last exposure has been determined—and with it the identity of the party against whom an award would be made under [§] 31-299b—agreements to let out certain parties must be viewed as interlocutory." The commissioner further observed that bringing the association back into the case would not prejudice it or any other party because no exhibits had yet been admitted, the association reserved its right to recall the only witness who had testified, namely, the plaintiff, and the association "will be granted reasonable time to prepare for [the] continuation of the formal hearing."[13]

The association appealed from the commissioner's decision to the board. Acknowledging that, "over the years, certain procedural customs and conventions have evolved [that] are unique to the management of the asbestos docket," the board concluded that the governing statutes "provide the framework for assessing the merits of a claim," and that a "close reading" of § 31-299b "indicates quite clearly that the legislature intended that the apportionment of liability among the various [defendants] in these claims can *only* occur after the conclusion of litigation on the merits of the underlying claim." (Emphasis in original.) The board, therefore, agreed with the commissioner's conclusion that, "until the date of last exposure has been determined—and with it the identity of the party against whom an award would be made under [§] 31-299b—agreements to let out certain parties must be viewed as interlocutory." (Internal quotation marks omitted.) To this end, the board concluded that it did not matter whether the hearing at which the association's motion to dismiss was granted was "formal" or "informal," insofar as the "actual language" of § 31-299b contemplates apportionment only after the adjudication on the merits of the underlying claim.[14] (Emphasis omitted; internal quotation marks omitted.) The board determined that the record demonstrated that the underlying merits of the plaintiff's claim, including compensability, had not yet been adjudicated at the time of the order

dismissing the association. The board further observed that "[t]o allow a party to escape liability prematurely because of a procedural irregularity, thereby potentially thwarting an injured claimant's ability to collect an award of benefits, not only does violence to the plain meaning of the statute but also clearly runs counter to the remedial nature and humanitarian purpose of the [act]."[15] Accordingly, the board affirmed the commissioner's decision granting the motions to reinstate the association as a party to this case. This appeal followed. See footnote 2 of this opinion.

On appeal, the association claims that, under §§ 31-300 and 31-301 (a), the failure, by the plaintiff and The Hartford, to appeal to the board rendered the commissioner's dismissal a final judgment. The association argues that the board's decision allowing it to be reinstated as a party "circumvented" §§ 31-300 and 31-301 (a), even assuming that § 31-299b does not allow for dismissals of claims against apportionment respondents prior to a formal adjudication as a matter of law. The association contends that the board's characterization of the previous proceedings as having " 'merely excus[ed] [the association] by agreement' is a wild mischaracterization," insofar as there was a formal hearing at which all parties had the opportunity to participate. The association further contends that the plaintiff's decision not to challenge its motion to dismiss was in effect a "[surrender] of [the] claim against" it, and that the board's decision has the effect of creating "different tiers of formal proceedings . . . ." Addressing an issue not reached by the board; see footnote 15 of this opinion; the association also argues that the commissioner improperly invoked § 31-315, which governs motions to open or modify awards, to support his decision to cite the association back into the case. Specifically, the association posits that § 31-315 does not support the commissioner's decision to reinstate it as a party because no conditions of fact changed between its dismissal and reinstatement.

In response, the plaintiff contends, inter alia, that "[t]he fluidity with which [defendants] are cited into and dismissed from asbestos disease claims is properly within the procedural discretion of the commissioners," and is consistent with the remedial purpose of the act, which is to provide a simple and efficient procedure that effectuates "the sole remedy for employees and their dependents for work-related injuries and death." *Green* v. *General Dynamics Corp.*, 245 Conn. 66, 71, 712 A.2d 938 (1998). The plaintiff also relies on § 31-298, which provides that the commissioner is not bound by "ordinary common law or statutory rules of evidence or procedure," to argue that a motion to dismiss before the commission is not identical, for purposes of finality, to a motion to dismiss filed in the Superior Court. To this end, the plaintiff relies on the customary deference afforded to the board's construction of the act, and

argues that principles of res judicata do not apply because the merits of the claims were never litigated, and that the dismissal was "merely administratively permitted" to facilitate the management of a factually complex occupational disease claim.

The plaintiff, The Hartford, and F.D. Rich emphasize that the association was not prejudiced by the "provisional dismissal" insofar as the association, through counsel, reserved the right to participate or object if brought back into the case, did in fact participate throughout, and had suffered no due process deprivation because no evidence on the merits has been admitted other than the plaintiff's testimony establishing her dependency, which the association has reserved its right to cross-examine. In contrast, the plaintiff argues that "[s]trict adherence to purported rules of procedure in this complex asbestos workers' compensation claim would certainly result in surprise and injustice" for her, because she would be left with no § 31-299b carrier if the association were not reinstated and The Hartford's motion to dismiss were ultimately granted. We agree with the plaintiff, The Hartford, and F.D. Rich and conclude that the board properly determined that the initial dismissal was provisional, thus permitting the commissioner to reinstate the association as a party to the proceedings.[16]

"As a threshold matter, we set forth the [well established] standard of review applicable to workers' compensation appeals. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and . . . board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . .

"Furthermore, [i]t is well established that, in resolving issues of statutory construction under the act, we are mindful that the act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing work-

ers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Citations omitted; internal quotation marks omitted.) *Sullins* v. *United Parcel Service, Inc.*, 315 Conn. 543, 550–51, 108 A.3d 1110 (2015).

A brief review of the act's apportionment scheme illuminates the process by which the commission adjudicates occupational disease claims involving multiple employers or insurers, such as those pending on its asbestos docket. "[T]he last insurer on a risk for which other insurers also bear some liability is deemed initially liable for payment to the injured employee, with the right to recover proportional reimbursement from the other insurers. See General Statutes § 31-299b." *Franklin* v. *Superior Casting*, 302 Conn. 219, 221–22, 24 A.3d 1233 (2011). "Section 31-299b mandates that the last insurer on the risk . . . pay the claimant. There is no common-law joint and several liability among . . . insurers that would allow the claimant to choose from which insurer he will recover." Id., 232–33; see also *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 312–13, 819 A.2d 260 (2003) (§ 31-299b applies only "to single instances of occupational diseases and repetitive trauma, and not to the consequences of separate injuries on separate occasions"). If the association stands in the shoes of the last insurer on the risk, it is responsible for that insurer's liability under § 31-299b, but may seek apportionment from the other employers or their insurers.[17] *Franklin* v. *Superior Casting*, supra, 232–33. Finally, § 31-299b sets forth a three step process under which: "(1) an award of compensation is made to the claimant; (2) the current employer or employer's insurer 'shall be initially liable for the payment of such compensation'; and (3) the commissioner, 'within a reasonable period of time after issuing an award, on the basis of the record,' must make two determinations: (a) the identification of prior employers or insurers that are liable for a portion of the claimant's compensation; and (b) the extent of their liability. General Statutes § 31-299b." *Ferraro* v. *Ridgefield European Motors, Inc.*, 313 Conn. 735, 748, 99 A.3d 1114 (2014); see also id., 750 ("[a]llowing an agreement between insurers to constrain a commissioner's authority to make findings following a hearing on an apportionment claim would be inconsistent with our jurisprudence addressing a commissioner's authority to render a decision in the area of compensation claims"); *Levarge* v. *General Dynamics Corp.*, 282 Conn. 386, 391–92, 920 A.2d 996 (2007) (apportionment under § 31-299b is not ministerial act, but requires independent analysis of employment and medical evidence).

The relative simplicity of the § 31-299b apportionment framework belies the factual complexity that

often attends the adjudication of occupational disease claims such as those presented in this case. "Occupational diseases are, from a legal standpoint, peculiar in . . . that they arise, not from an accident or event happening at a precise moment, but from a day by day exposure to unhealthful conditions over an extended period; the exact time of their origin is necessarily obscure and their insidious progress is not revealed until, frequently after a long interval, the disability which they create manifests itself." (Internal quotation marks omitted.) *Green* v. *General Dynamics Corp.*, supra, 245 Conn. 72–73. The parties agree that the nature of occupational disease claims often renders them factually complex because they may implicate numerous employers and their insurers, particularly at the outset of a claim brought by a claimant with a lengthy work history, when the periods of exposure have yet to be determined. For example, this case required the decedent, who had a thirty year career as a carpenter, to send notices of claim to twenty-nine employers, some of whom had multiple insurance carriers. As the board observed in its decision in this case, these complexities have resulted in the "evol[ution]" of "certain procedural customs and conventions . . . unique to the management of the [commission's] asbestos docket."

The commission's management of these complicated apportionment matters is facilitated by its commissioners' extensive discretion over the conduct of hearings before them, conferred upon it by § 31-298. That statute dispenses with "formal pleadings . . . beyond any informal notices that the commission approves," and requires the trial commissioner to "proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter."[18] General Statutes § 31-298. The adjudicatory and case management authority conferred by § 31-298 is "broad . . . ." *Bailey* v. *State*, 65 Conn. App. 592, 604, 783 A.2d 491 (2001); see also *Bidoae* v. *Hartford Golf Club*, 91 Conn. App. 470, 479–80, 881 A.2d 418 (given "the mandate of § 31-298 that the commissioner protect the substantial rights of the parties while exercising his broad, equitable powers to take evidence and to carry out the provisions of [the act], we hold that the commissioner did not abuse his discretion in precluding the plaintiff from admitting evidence from her vocational rehabilitation expert when she disregarded the commissioner's order to submit to an examination by the defendants' expert"), cert. denied, 276 Conn. 921, 888 A.2d 87 (2005), cert. denied, 547 U.S. 1112, 126 S. Ct. 1916, 164 L. Ed. 2d 665 (2006); *Walter* v. *State*, 63

Conn. App. 1, 15, 774 A.2d 1052 (upon finding that employer had not been properly notified of hearing, and prior to issuance of award, commissioner "properly exercised his discretionary power under § 31-298" in granting employer's motion to open record because that "resulted in a hearing on the merits of the claim, rather than the conclusive presumption of liability provided by a granting of a motion to preclude"), cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001).

Most significantly, § 31-298 makes clear that practice and procedure before the commission does not mirror practice and procedure before the courts of the Judicial Branch, unless a statute specifically so provides. Cf. General Statutes § 31-301 (e) ("[t]he procedure in appealing [to the board] from an award of the commissioner shall be the same as the procedure employed in an appeal from the Superior Court to the Supreme Court, where applicable"); General Statutes § 31-315 ("[t]he commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court"). This reflects that "the proceedings [before the commission] were designed to facilitate a speedy, efficient and inexpensive disposition and to reduce the necessity of legal counsel for the claimant." *Menzies* v. *Fisher*, 165 Conn. 338, 346, 334 A.2d 452 (1973); see also *Schreck* v. *Stamford*, 250 Conn. 592, 600, 737 A.2d 916 (1999) (recognizing value of legal counsel in workers' compensation proceedings, particularly those with complex legal or factual issues).

Given the general informality of workers' compensation proceedings, the board has recognized that motions practice before the commission is relatively limited, with motions generally restricted to only those with a specific "statutory, regulatory or due process basis," namely, "motions to preclude, motions to re-open and modify, certain motions for discovery, motions to correct and motions to dismiss." *Poventud* v. *Eagle Four*, 6 Conn. Workers' Comp. Rev. Op. 72, 73 (1998); see id. (declining to review commissioner's refusal to rule on motion in limine filed to address admissibility of physician's testimony, despite widespread use of that motion in Superior Court, because "[o]ur legislators in 1913 did not envision that claims procedure would be encumbered with the pleading formalities required in the courts"); cf. *Gonirenki* v. *American Steel & Wire Co.*, 106 Conn. 1, 9, 137 A. 26 (1927) ("we do not understand that [commissioners] have ever adopted a procedure requiring pleadings as in our courts, or that demurrers, motions to dismiss, and like pleadings, are any part of the established procedure before them"). Indeed, commissioners necessarily have broad authority with respect to the scope of motions to dismiss, insofar as there is no statute or regulation specifically governing them beyond the fact that the "statutory language [of § 31-298] is capacious enough to include the power to

dismiss a claim in an appropriate case." *Pietraroia* v. *Northeast Utilities*, 254 Conn. 60, 71, 756 A.2d 845 (2000); see also id., 72 (commissioner has authority under § 31-298 to dismiss claim without adjudicating its merits, if claimant fails to appear for trial or independent medical examination because otherwise "claim would remain in a procedural limbo"). We have recognized that such dismissals have been made with or without prejudice. See id., 69 n.11.

Thus, in the absence of binding common law or statutory rules of evidence or procedure, the nature of motions practice in hearings before the commission is cabined only by procedural due process, which "requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." (Internal quotation marks omitted.) *Testone* v. *C. R. Gibson Co.*, 114 Conn. App. 210, 217, 969 A.2d 179, cert. denied, 292 Conn. 914, 973 A.2d 663 (2009); see also, e.g., *Bryan* v. *Sheraton-Hartford Hotel*, 62 Conn. App. 733, 741, 774 A.2d 1009 (2001) (in proceedings before commission, "[a]n integral premise of due process is that a matter cannot be properly adjudicated unless the parties have been given a reasonable opportunity to be heard on the issues involved" [internal quotation marks omitted]).

We conclude, therefore, that a commissioner, in managing complex multiparty cases such as those on the asbestos docket, has the authority under § 31-298 to dismiss a claim provisionally, and then, if necessary, reinstate the dismissed party into the proceedings prior to a final determination of the compensability of the claim and the apportionment of any liability under § 31-299b. We further conclude that the board properly deemed the order dismissing the association in this case to be provisional, rather than a final award subject to § 31-315, despite the lapse of the appeal period set forth in §§ 31-300 and 31-301 (a).[19] First, consistent with the fact that the compensability of the decedent's illness had yet to be determined, the commissioner did not characterize the order dismissing the association in a manner suggesting its finality, such as by calling it "an award" or noting that the dismissal was "with prejudice." See *Pietraroia* v. *Northeast Utilities*, supra, 254 Conn. 69 and n.11 (considering propriety of dismissal " 'with prejudice' " as result of claimant's failure to appear, and emphasizing that such dismissal meant "with finality—without the ability in the [claimant] to revive it"). Further, as the board noted, although the plaintiff, The Hartford, and F.D. Rich did not object to the association's initial motion to dismiss, neither did they at any time stipulate specifically to a lack of liability on its part on the record. This, coupled with the fact that compensability of the claim had not yet been deter-

mined for purposes of the first step under the § 31-299b apportionment process, strongly suggests that the dismissal of the association was not entitled to administrative finality with the effect of res judicata.[20] See *Marone* v. *Waterbury*, 244 Conn. 1, 12–13, 707 A.2d 725 (1998) (noting that res judicata depends on lack of need for further action by court to determine matter); see also *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, 293 Conn. 582, 594, 980 A.2d 819 (2009) (grievance committee dismissal of arbitration request was not " 'mutual, final and definite' " award for purposes of General Statutes § 52-418 [a]). Given the sheer multiplicity of respondents in the typical asbestos case, the commissioner must have the discretion under § 31-298 to, as the commissioner in this case put it, "clear the room" or "[cull] the herd," with the flexibility of reinstating parties or insurers to the proceedings should the date of last exposure be different than anticipated. (Internal quotation marks omitted.)

Finally, the provisional nature of the order dismissing the association and the permissibility of reinstating the association as a party to the proceedings are both demonstrated by the fact that the record reveals no prejudice to the association from the commissioner's order granting the motions to reinstate it as a party. Out of an apparent abundance of caution, the association's attorney has prudently attended all proceedings before the commission, and there has been no fact finding yet with respect to the compensability of, and liability for, the benefits due to the plaintiff. Moreover, as was discussed at oral argument before this court, the record does not reveal any problems with respect to the loss of evidence occasioned by the association's dismissal. Finally, to the extent that any evidence has been admitted, that evidence consists of the plaintiff's very brief testimony to establish her entitlement to dependent benefits under the act; the commissioner granted the association the opportunity to recall her for cross-examination should it desire to do so. Cf. *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 586–87, 986 A.2d 1023 (2010) (failure to file formal motion to modify does not preclude modification of award pursuant to § 31-315 to obtain total incapacity benefits, given remedial purpose of act and fact that "the record demonstrates that the commissioner and the parties considered the plaintiff's application for total incapacity benefits to be the equivalent of a motion to open or modify," and there was no evidence of prejudice because defendant had adequate notice of hearing and "were able to participate, present evidence, and cross-examine witnesses"). Accordingly, because the order dismissing the association was provisional, rather than final, we conclude that the board properly affirmed the commissioner's decision to grant the motions to reinstate the association as a party to the workers'

compensation proceedings.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other justices concurred.

[1] "The association is a nonprofit unincorporated legal entity created by General Statutes § 38-276 [now General Statutes § 38a-839] and composed of all insurers licensed to transact business in this state that write any kind of direct insurance, except for those specifically excluded from the application of the Connecticut Insurance Guaranty Association Act by General Statutes § 38-274 [now General Statutes § 38a-837]. . . . The association was established in order to reimburse, to a limited extent, covered claims against insolvent insurers." (Citation omitted; internal quotation marks omitted.) *Franklin* v. *Superior Casting*, 302 Conn. 219, 222 n.2, 24 A.3d 1233 (2011). Under General Statutes § 31-355 (e), the commission has jurisdiction to determine the association's obligations with respect to workers' compensation claims, namely, those asserted against insolvent insurers. See *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 445–47, 705 A.2d 1012 (1997).

[2] The association appealed to the Appellate Court; see General Statutes § 31-301b; and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] We note that the order dismissing the claim against the association was issued by Commissioner Amado J. Vargas, while the order reinstating the association as a party was issued by Commissioner David Schoolcraft. In the interest of simplicity, we refer herein to both as the commissioner.

[4] The named plaintiff in the present case, John Graham, who was Carmel Graham's husband, filed the original claims for workers' compensation benefits in 2006. After he died in 2008, Carmel Graham filed a claim for dependent benefits that was joined with the original claims. In the interest of simplicity, all references to the plaintiff hereinafter are to Carmel Graham.

[5] Several other parties participated as defendants in the proceedings before the commission including, inter alios, the named defendant, Olson Wood Associates, Inc. These additional parties, however, are not relevant to the present appeal.

[6] General Statutes § 31-300 provides in relevant part: "As soon as may be after the conclusion of any hearing, but no later than one hundred twenty days after such conclusion, the commissioner shall send to each party a written copy of the commissioner's findings and award. . . . If no appeal from the decision is taken by either party within twenty days thereafter, such award shall be final and may be enforced in the same manner as a judgment of the Superior Court. . . ." Although § 31-300 has been the subject of certain technical amendments since the events underlying the present case; see, e.g., Public Acts 2011, No. 11-44, § 49; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[7] General Statutes § 31-301 (a) provides in relevant part: "At any time within twenty days after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the Compensation Review Board by filing in the office of the commissioner from which the award or the decision on a motion originated an appeal petition and five copies thereof. . . ."

[8] General Statutes § 31-315 provides in relevant part: "Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter . . . shall be subject to modification in accordance with the procedure for original determinations, upon the request of either party . . . whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement, award or transfer in order properly to carry out the spirit of this chapter. The commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

[9] General Statutes § 31-298 provides in relevant part: "Both parties may appear at any hearing, either in person or by attorney or other accredited representative, and no formal pleadings shall be required, beyond any informal notices that the commission approves. In all cases and hearings under the provisions of this chapter, the commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. . . ."

[10] General Statutes § 31-299b provides in relevant part: "If an employee suffers an injury or disease for which compensation is found by the commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, shall be initially liable for the payment of such compensation. The commissioner shall, within a reasonable period of time after issuing an award, on the basis of the record of the hearing, determine whether prior employers, or their insurers, are liable for a portion of such compensation and the extent of their liability. If prior employers are found to be so liable, the commissioner shall order such employers or their insurers to reimburse the initially liable employer or insurer according to the proportion of their liability. Reimbursement shall be made within ten days of the commissioner's order with interest, from the date of the initial payment, at twelve per cent per annum. If no appeal from the commissioner's order is taken by any employer or insurer within twenty days, the order shall be final and may be enforced in the same manner as a judgment of the Superior Court. . . ."

[11] The January 26, 2011 formal hearing was the product of a remand order from the board. Specifically, in June, 2009, the association moved to dismiss the proceedings for lack of jurisdiction. That motion was denied, and the association appealed to the board. In July, 2009, the board concluded that the association's appeal was premature without a record, and remanded the case for "a formal hearing or other appropriate action."

[12] The commissioner also observed that, by the time of the association's motion to dismiss, the board had already issued a decision, later upheld in *Franklin* v. *Superior Casting*, 302 Conn. 219, 232–33, 24 A.3d 1233 (2011), holding that if the association stands in the shoes of the last insurer on the risk, it is not relieved from liability under § 31-299b, but may seek apportionment from the claimant's other employers or their insurers.

[13] The commissioner also denied The Hartford's motion to dismiss, concluding that it would be more appropriate to consider its arguments with respect to lack of exposure after the close of the evidentiary record.

[14] The board further observed that, notwithstanding the custom and practice of "excus[ing], by agreement, certain participants from attending all of the hearings [that] occur during the prosecution of an asbestos claim, it may safely be said, given the sequence of events contemplated by § 31-299b . . . that any party who elects not to participate in hearings is doing so at its own risk." (Internal quotation marks omitted.)

[15] Given its conclusion that the order dismissing the association was not a final judgment, the board declined to consider whether the commissioner's granting of the motions to reinstate the association was a proper application of § 31-315, with respect to a motion to open.

[16] Given our conclusion that the order dismissing the association was not final, we, like the board, do not reach its claim that the order reinstating it was not consistent with § 31-315, which governs motions to open awards. See footnote 15 of this opinion.

[17] In *Franklin* v. *Superior Casting*, supra, 302 Conn. 233–35, this court distinguished its holding in *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 452–54, 705 A.2d 1012 (1997), that a solvent insurer that was the last insurer on a risk could not seek apportionment from the association under § 31-299b because such a claim, asserted by an insurer against the association, was not a "covered claim" for which the association is liable under General Statutes § 38a-841. In *Hunnihan*, the court recognized that "§ 31-299b, by placing initial liability on the last insurer in circumstances where a compensable injury is the responsibility of several insurers, may create a hardship for the last insurer in the event that a prior insurer has become insolvent . . . ." Id., 453–54. Our more recent decision in *Franklin*, however, rejected the association's argument that "holding the solvent insurer . . . liable for the entire claim renders the only result that is consistent with *Hunnihan*, namely, that there can be no apportionment between the

association and an insurer," and that "shifting liability to solvent insurers is consistent with the policies underlying the [Connecticut Insurance Guaranty Act, General Statutes § 38a-836 et seq.], protecting the association's limited assets and the interests of consumers." *Franklin* v. *Superior Casting*, supra, 226.

[18] We note that it is well established that § 31-298 is not itself an independent source of jurisdiction, insofar as it "deals with the manner in which testimony is obtained and hearings are conducted. It does not provide the commissioner with any specific jurisdiction over particular types of claims or questions." *Stickney* v. *Sunlight Construction, Inc.*, 248 Conn. 754, 765, 730 A.2d 630 (1999); see, e.g., *Gill* v. *Brescome Barton, Inc.*, 317 Conn. 33, 42 n.11, 114 A.3d 1210 (2015) (§ 31-298 did not authorize reimbursement order); *Leonetti* v. *MacDermid, Inc.*, 310 Conn. 195, 218–20, 76 A.3d 168 (2013) (§ 31-298 did not operate with General Statutes § 31-290c, workers' compensation fraud statute, to render commission "competent" to consider allegedly fraudulent conduct of claimant in entering into severance agreement purporting to resolve his workers' compensation claim because that conduct "related to the agreement does not affect the compensability of the claimant's injury"); *Stickney* v. *Sunlight Construction, Inc.*, supra, 765 (reference to " 'equity' " in § 31-298 does not provide commissioner with jurisdiction over coverage dispute between insurers); *O'Neil* v. *Honeywell, Inc.*, 66 Conn. App. 332, 339–40, 784 A.2d 428 (2001) (equitable provisions of § 31-298 do not afford commissioner authority to open stipulated award, because that authority is governed by § 31-315), cert. denied, 259 Conn. 914, 792 A.2d 852 (2002).

[19] We acknowledge that the twenty day appeal period set forth in § 31-301 (a) relates to the board's subject matter jurisdiction. See *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 371, 10 A.3d 1 (2010). Accordingly, by holding that a motion to reinstate the dismissed party is an appropriate procedural vehicle with which to address a dismissal later deemed to have been improvident, we do not suggest that the provisional nature of the dismissal renders it appealable to the board outside of that statutory period.

[20] We disagree with the association's reliance on *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), for the proposition that the order dismissing it is a final judgment entitled to preclusive effect. *Curcio* is a well established gloss on the final judgment requirement of General Statutes § 52-263, which governs the appellate jurisdiction of this court and the Appellate Court with respect to reviewing judgments of the Superior Court. But see *Dechio* v. *Raymark Industries, Inc.*, 299 Conn. 376, 400–401, 10 A.3d 20 (2010) (concluding that § 31-301 [a] does not impose final judgment requirement for appeals to board from decisions of trial commissioner, and noting that General Statutes § 31-301b does not impose final judgment requirement on appeals to Appellate Court from decisions of board). Nevertheless, there is a "distinction between finality for purposes of appeal" and finality "for purposes of res judicata," despite the fact that "the two often overlap." *Marone* v. *Waterbury*, 244 Conn. 1, 12, 707 A.2d 725 (1998). *Curcio* is, therefore, wholly inapposite because it concerns finality for the purpose of appealability, rather than finality for the purpose of preclusion.